**UNITED STATES of America, Appellee,**

v.

**Stanislaw KOZIEL and Andrzej Fiedor, Defendants–Appellants.**

Nos. 621, 622, Dockets 91–1304, 91–1305.

United States Court of Appeals, Second Circuit.

Argued Dec. 18, 1991.

Decided Jan. 22, 1992.

Gretchen L. Wylegala, Asst. U.S. Atty., for the Western District of New York, Buffalo, N.Y. (Dennis C. Vacco, U.S. Atty. for the Western District of New York, on the brief), for appellee.

Raymond J. Dziedzic, Buffalo, N.Y. (Law Office of Leonard Walentynowicz, on the brief), for defendants-appellants.

Before TIMBERS, MESKILL and KEARSE, Circuit Judges.

KEARSE, Circuit Judge:

Defendants Stanislaw Koziel and Andrzej Fiedor, aliens resident in the United States, seek (1) review of judgments of conviction entered in the United States District Court for the Western District of New York following their pleas of guilty before John T. Elfvin, *Judge*, to one count of conspiracy to transport, harbor, and smuggle aliens into the United States, in violation of 8 U.S.C. §§ 1324(a)(1)(B), (a)(1)(C), and (a)(2)(B) (1988), and 18 U.S.C. § 371 (1988), and (2) review of a subsequent order denying defendants' applications for Judicial Recommendations Against Deportation ("JRADs") pursuant to 8 U.S.C. § 1251(b)(2) (1988), *repealed* by Immigration Act of 1990 ("1990 Act"), Pub.L. No. 101–649, § 505, 104 Stat. 4978, 5050 (1990). The district court denied the requested JRADs on the ground that § 1251(b)(2) had been repealed by the 1990 Act. On appeal, defendants (1) challenge certain of the district court's findings made in connection with sentencing, and (2) contend that the application to them of the repealer violated their rights under the *Ex Post Facto* Clause of the Constitution, U.S. Const. art. I, § 9. For the reasons below, we dismiss defendants' appeals to the extent that they challenge the sentences, and we affirm the order denying JRADs.

## I. BACKGROUND

Defendants were arrested on May 16, 1990, after 13 Polish aliens were found in a

hidden compartment of a trailer owned by Fiedor and driven by Koziel from Canada into the United States. Following defendants' pleas of guilty on the smuggling conspiracy charge indicated above, and following sentencing proceedings that included an evidentiary hearing, the district court sentenced each defendant principally to six months' imprisonment to be served in a half-way house, followed by a two-year term of supervised release, and a $2,000 fine. The judgments of conviction, dated March 26, 1991, were entered on March 27, 1991. No notices of appeal from the judgments were filed.

On April 17, 1991, defendants asked the district court to recommend pursuant to 8 U.S.C. § 1251(b)(2) that they not be deported on account of their convictions. Prior to November 29, 1990, the effective date of § 505 of the 1990 Act, § 1251(b)(2) had given the district court discretion, upon a defendant's conviction of certain offenses, to make a binding recommendation to the Attorney General of the United States that the defendant not be deported on account of that conviction. *See generally Janvier v. United States,* 793 F.2d 449, 452 (2d Cir.1986). The 1990 Act, however, repealed § 1251(b)(2). Defendants argued that since the conduct leading to their convictions occurred prior to the effective date of the repealer, the repealer could not be applicable to them. They asked the court to stay the April 24 date on which they were scheduled to report to half-way houses and to impose on them new sentences that included JRADs.

In an order dated April 25, 1991 ("April 25 Order"), the district court denied defendants' applications. It noted that the 1990 Act, which was enacted on November 29, 1990, stated that the repealer of § 1251(b)(2) "shall apply to convictions entered before, on, or after" "the date of the enactment of this Act," 1990 Act, Pub.L. No. 101–649, § 505(b), 104 Stat. 4978, 5050 (1990). The court thus concluded that it had no power to grant JRADs to these defendants. Construing defendants' requests for resentencing as petitions for vacation of sentence under 28 U.S.C. § 2255

(1988), the court also found that there was no basis for such relief.

The present appeals followed, as, on May 3, 1991, defendants filed notices of appeal from the April 25 Order and "from each and every part of said Order."

## II. DISCUSSION

On appeal, defendants (1) challenge the judgments of conviction, contending that the district court erred in making certain findings of fact in connection with the March 1990 sentencing, and (2) pursue the contention that the application to them of the repeal of JRADs violated the *Ex Post Facto* Clause of the Constitution. We conclude that we lack jurisdiction over the challenges to the sentences and that the *ex post facto* contention is without merit.

### A. *The Challenges to the Judgments of Conviction*

■ Rule 4(b) of the Federal Rules of Appellate Procedure provides that, except in circumstances not pertinent here, in order to be timely a notice of appeal from a judgment of conviction in a criminal case must be filed within 10 days of entry of the judgment. Fed.R.App.P. 4(b). The district court has but limited power to extend the time for appeal, and that power is to be exercised only upon a showing of excusable neglect. *Id.* The court of appeals has no power to enlarge the 10–day period. *See* Fed.R.App.P. 26(b). As to an appeal that is untimely, the court of appeals lacks jurisdiction. *See, e.g., United States v. Robinson,* 361 U.S. 220, 224, 80 S.Ct. 282, 285, 4 L.Ed.2d 259 (1960) (construing predecessor to Fed.R.App.P. 4(b)).

In the present case, the judgments of conviction were entered on March 27, 1991. No notices of appeal were filed until May 3, 1991, some five weeks later. No motion was made for an expansion of the time to appeal. On their face, therefore, the May 3 notices of appeal were untimely with respect to the March 27 judgments.

■ Defendants' April 17, 1991 motions for modification of the judgments to include JRADs could not serve to extend

the time for their appeals from the March 27 judgments. Nothing in their applications expressed a request for such an extension, and a JRAD application is not intrinsically the equivalent of a request for such an extension. Indeed, a JRAD application is not even necessarily the equivalent of a motion to modify a judgment of conviction, for a JRAD did not have to be part of the judgment; prior to its repeal, § 1251(b)(2) permitted the making of a JRAD at any time within 30 days *after* entry of the judgment. *See generally Janvier v. United States,* 793 F.2d at 452–55. In any event, even if the applications made by these defendants could be construed as requests for extensions of the time to appeal, the district court denied the applications in their entirety. The denial of a motion for an extension of the time to appeal is not reviewable except for abuse of discretion in the district court's conclusion that excusable neglect has not been shown. *See, e.g., United States v. Myers,* 692 F.2d 861, 863 (2d Cir.1982) (per curiam); *Lowry v. Long Island R.R.,* 370 F.2d 911, 912 (2d Cir.1966). No excusable neglect was revealed here, and there was no abuse of discretion.

In sum, by the May 3, 1991 date of the filing of the notices of appeal in the present case, the time to appeal from the judgments of conviction had expired. Accordingly, this Court lacks jurisdiction to hear appeals challenging those judgments.

## B. *The Retroactive Elimination of JRADs*

■ Turning to defendants' *ex post facto* challenges to the district court's denial of their applications for JRADs, as to which their notices of appeal were timely, we conclude that these challenges are without merit.

A long and unwavering line of authority has established that statutes retroactively setting criteria for deportation do not violate the *ex post facto* provision. In *Bugajewitz v. Adams,* 228 U.S. 585, 591, 33 S.Ct. 607, 608, 57 L.Ed. 978 (1913), the Supreme Court noted that "[i]t is thoroughly established that Congress has power to order

the deportation of aliens whose presence in the country it deems hurtful," and that the determination that an alien is an undesirable person "is not a conviction of crime, nor is the deportation a punishment; it is simply a refusal by the Government to harbor persons whom it does not want." *Id.* These principles were reiterated in *Mahler v. Eby,* 264 U.S. 32, 44 S.Ct. 283, 68 L.Ed. 549 (1924), in which the Court ruled that, by passing a 1920 statute making pre–1920 convictions grounds for deportation, Congress "was not increasing the punishment for the crimes of which petitioners had been convicted, by requiring their deportation if found undesirable residents." *Id.* at 39, 44 S.Ct. at 286. The Court stated that "[i]t is well settled that deportation, while it may be burdensome and severe for the alien, is not a punishment." *Id.*

In *Harisiades v. Shaughnessy,* 342 U.S. 580, 593–96, 72 S.Ct. 512, 520–22, 96 L.Ed. 586 (1952), the Court upheld the retroactive application of a 1940 statute that made deportable any alien who had joined the Communist party after entering the United States. Citing *Mahler v. Eby,* and *Bugajewitz v. Adams,* the Court noted that the principle that the *Ex Post Facto* Clause is not applicable to deportation

> has been followed by this Court from earliest times. It always has been considered that that which [the *ex post facto* provision] forbids is penal legislation which imposes or increases criminal punishment for conduct lawful previous to its enactment. *Deportation, however severe its consequences, has been consistently classified as a civil rather than a criminal procedure.* Both of these doctrines as original proposals might be debatable, but both have been considered closed for many years and a body of statute and decisional law has been built upon them.

342 U.S. at 594, 72 S.Ct. at 521 (emphasis added); *see id.* at 595, 72 S.Ct. at 521. In *Galvan v. Press,* 347 U.S. 522, 74 S.Ct. 737, 98 L.Ed. 911 (1954), the Court upheld a similar statute with similar retroactive effect. It noted that "since the intrinsic consequences of deportation are so close to

punishment for crime, it might fairly be said also that the *ex post facto* Clause, even though applicable only to punitive legislation, should be applied to deportation. But the slate is not clean." *Id.* at 531, 74 S.Ct. at 742. *Accord Marcello v. Bonds,* 349 U.S. 302, 314, 75 S.Ct. 757, 764, 99 L.Ed. 1107 (1955) (holding that retroactive application of new grounds for deportation provided by Immigration and Nationality Act of 1952 did not violate *Ex Post Facto* Clause, citing *Galvan v. Press* and *Harisiades v. Shaughnessy* ); *Lehmann v. Carson,* 353 U.S. 685, 689–90, 77 S.Ct. 1022, 1024, 1 L.Ed.2d 1122 (1957) (same); *see also INS v. Lopez–Mendoza,* 468 U.S. 1032, 1039, 104 S.Ct. 3479, 3483, 82 L.Ed.2d 778 (1984) (stating obiter that *"Ex Post Facto* Clause has no application to deportation").

In the cases discussed above, the Court found that statutes making a person deportable on the basis of conduct that had not been grounds for deportation at the time the conduct occurred did not violate the *Ex Post Facto* Clause. The 1990 Act's repeal of the provision for JRADs is less problematical, for it does not make a person deportable for acts for which he or she could not have been deported at the time they occurred; and it does not deprive him or her of any entitlement, for the district court's decision whether or not to grant a JRAD was entirely discretionary. We conclude that there is no *ex post facto* impediment to Congress's making the abolition of JRADs applicable to convictions for conduct engaged in before the enactment of the repealer.

This conclusion is not inconsistent with our ruling in *Janvier v. United States,* in which we concluded that Congress had intended JRADs to be closely tied to the sentencing process, *see* 793 F.2d at 452–55, and ruled that since sentencing is a critical stage of the prosecution, *see, e.g., Mempa v. Rhay,* 389 U.S. 128, 134, 88 S.Ct. 254, 256, 19 L.Ed.2d 336 (1967), the defendant was entitled to the effective assistance of counsel in connection with an application for a JRAD. We did not thereby suggest that any denial of a JRAD would constitute additional punishment. Rather, we had observed at the outset that deportation itself is a civil matter "to which the constitutional protections applicable to criminal prosecutions do not apply. *Abel v. United States,* 362 U.S. 217, 237, 80 S.Ct. 683, 696, 4 L.Ed.2d 668 (1960) ('deportation proceedings are not subject to the constitutional safeguards for criminal prosecutions')." *Janvier v. United States,* 793 F.2d at 451. Though we noted that Congress intended the denial of a JRAD to be part of the "penalty" imposed on a person convicted of the specified crimes, the term "penalty" is not synonymous with "punishment." Plainly deportation is a penalty, *see, e.g., Fong Haw Tan v. Phelan,* 333 U.S. 6, 10, 68 S.Ct. 374, 376, 92 L.Ed. 433 (1948) (deportation is a "forfeiture for misconduct"; "[s]uch a forfeiture is a penalty"); but there can be no doubt, given the long line of decisions described above, that it is a *civil* penalty. Congress's retroactive elimination, in the 1990 Act, of a sentencing court's power to grant relief from the civil penalty of deportation does not increase the criminal penalties and hence does not violate the *Ex Post Facto* Clause.

## CONCLUSION

We have considered all of defendants' arguments on their appeals from the April 25 Order and have found in them no basis for reversal. Their challenges to the judgments of conviction are dismissed for lack of appellate jurisdiction; the April 25 Order is affirmed.