Gyno DOMOND, Petitioner–Appellee,

v.

**UNITED STATES IMMIGRATION AND NATURALIZATION SERVICE, Defendant–Appellant.**

**Docket No. 99–2619.**

United States Court of Appeals, Second Circuit.

Argued: Oct. 24, 2000.

Decided: March 23, 2001.

James K. Filan Jr., Assistant United States Attorney for the District of Connecticut, New Haven, Conn. (David W. Ogden, Acting Assistant Attorney General,

Civil Division, Stephen C. Robinson, United States Attorney for the District of Connecticut, Quynh Vu, Office of Immigration Litigation, Washington, DC, on the brief) for Defendant–Appellant.

Nancy Morawetz, New York, N.Y. (Michael G. Moore, Springfield, MA, on the brief) for Petitioner–Appellee.

Before CARDAMONE, WINTER and POOLER, Circuit Judges.

POOLER, Circuit Judge:

Before Congress passed the Anti–Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), legal resident aliens facing deportation for the commission of crimes were entitled to Section 212(c) hearings, named for the section of the Immigration and Naturalization Act authorizing them. At a Section 212(c) hearing, deportees could win a discretionary waiver of deportation by arguing the equities weighed in favor of their remaining in the United States. Section 440(d) of AEDPA eliminated Section 212(c) hearings for certain criminal aliens when it went into effect on April 24, 1996. Congress simply chose not to afford those affected aliens any outlet to escape deportation. Gyno Domond came to the United States in 1985 from Haiti with his parents and obtained legal resident alien status in 1993. Domond committed the offense of robbery in November 1994, but Connecticut state court did not convict him of the crime until he pleaded guilty on November 8, 1996 to second-degree robbery. The Immigration and Naturalization Service ("INS") subsequently issued an order to show cause, charging Domond with being deportable because of his felony conviction. An immigration judge found Domond deportable as an alien convicted of an aggravated felony, robbery in the second degree. Domond's request for a Section 212(c) hearing was denied by an immigration judge, and the

Board of Immigration Appeals denied his subsequent appeal because Domond's guilty plea came after AEDPA's effective date, even though his criminal conduct predated AEDPA's enactment. Domond filed a habeas corpus petition, pursuant to 28 U.S.C. § 2241, which the United States District Court for the District of Connecticut granted. The district court held that the laws in effect at the time of Domond's criminal conduct, that is, the laws in effect before AEDPA, should govern his deportation proceedings. *See Dunbar v. Immigration & Naturalization Serv.,* 64 F.Supp.2d 47, 53 (D.Conn.1999). This appeal from the INS followed. For the reasons given below, we reverse.

## BACKGROUND

For most of the past century, lawful permanent resident aliens convicted of certain crimes were deemed deportable, but they were able to apply for some form of discretionary relief from deportation. *See St. Cyr v. Immigration & Naturalization Serv.,* 229 F.3d 406, 410 (2d Cir.2000) (*citing Francis v. Immigration & Naturalization Serv.,* 532 F.2d 268, 272–73 (2d Cir. 1976)) *cert. granted,* —— U.S. ——, 121 S.Ct. 848, 148 L.Ed.2d 733 (2001).[1] Prior to the enactment of AEDPA in 1996, discretionary relief was available via a waiver of deportation, which allowed the Attorney General to "waive the grounds for deportation under certain conditions in the case of a lawfully admitted permanent resident in deportation proceedings." *St. Cyr,* 229 F.3d at 410; *see also* Immigration and Nationality Act § 212(c), 8 U.S.C. § 1182(c) (repealed) (1994). Aliens were eligible to apply for these Section 212(c) waivers once they accrued seven years of lawful, permanent residence in the United States. *See* 8 U.S.C. § 1182(c) (repealed) (1994). So long as aliens met the residence requirements and were not convict-

---

1. Domond's co-petitioners were Rohan P. Dunbar and Enrico St. Cyr. The district court granted all three habeas petitions. This Circuit upheld the grant of Mr. St. Cyr's writ on

appeal. *See St. Cyr,* 229 F.3d at 421. The INS is withdrawing its appeal of Mr. Dunbar's writ.

ed of an "aggravated felony," as defined in the statute, the Attorney General could chose to exercise her discretion to waive deportation. *Id.*

Congress decided to change the immigration statutory scheme by passing AEDPA, in part to increase the number of criminal aliens deported. *See, e.g.,* H.R. Conf. Rep. No. 104–518, at 119 (1996), reprinted in 1996 U.S.C.C.A.N. 924, 952. At issue here is AEDPA § 440(d), which eliminated Section 212(c) hearings for aliens convicted of certain crimes. *See* AEDPA § 440(d); Pub. L. No. 104–132, 110 Stat. 1214 *et seq.* (Supp. IV 1998). Subsequently, in September 1996, Congress enacted the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub. L. No. 104–208, 100 Stat. 3009–546 *et seq.* IIRIRA repealed Section 212(c) altogether and replaced it with a different form of discretionary relief from deportation, known as cancellation of removal. *See* IIRIRA § 304(b), 110 Stat. at 3009–597; *codified at* 8 U.S.C. § 1229b (West 1998).

■ Caught in this web of statutory transition is Domond. As noted previously, immigration officials denied Domond discretionary relief from deportation because his conviction took place after AEDPA's enactment. Domond filed his habeas corpus petition in federal court, which the court heard in tandem with two similar habeas petitions. Domond argued that Section 440(d) should not apply to aliens whose criminal conduct occurred prior to AEDPA's effective date of April 24, 1996. Applying the retroactivity analysis set forth in *Landgraf v. USI Film Prods.,* 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994), the district court held "petitioners should have their deportation proceedings governed by the laws that were in effect at the time they committed their crimes" and granted the writ. *Dunbar,* 64 F.Supp.2d at 53. The INS appealed, and we review

these matters of law *de novo. See United States v. Figueroa,* 165 F.3d 111, 114 (2d Cir.1998).

## DISCUSSION

### A. Effect of St. Cyr

■ Shortly before oral argument in the matter before us, this Court issued its opinion in *St.Cyr,* which held that AEDPA's bar to a Section 212(c) hearing does not apply to aliens who pleaded guilty or *nolo contendere* prior to IIRIRA's and AEDPA's effective dates. *See St.Cyr,* 229 F.3d at 421. As a preliminary matter, we noted in *St. Cyr:*

> [I]t is difficult to argue that barring eligibility for discretionary relief on the basis of pre-enactment criminal conduct—as opposed to a plea going to the guilt of a deportable crime—constitutes an impermissible retroactive application of a statute. Indeed, we agree that,
>
> > It would border on the absurd to argue that these aliens might have decided not to commit drug crimes, or might have resisted conviction more vigorously, had they known that if they were not only imprisoned but also, when their prison term ended, ordered deported, they could not ask for a discretionary waiver of deportation.

*Id.* at 418 (citations omitted). Although *St. Cyr* involved a different factual situation than the one before us, we reach the same result as the *St. Cyr* panel. We write to expand the analysis.

### B. Retroactivity

■ We turn now to the issue of whether elimination of Section 212(c) hearings for those whose criminal conduct predates AEDPA's effective date but whose convictions post-date it is impermissively retroactive.[2] The presumption against retroactive legislation is "deeply rooted in our

2. Domond's case was heard in tandem with *Pottinger v. Reno,* Nos. 99–2684 et al., which we decided in a summary order because *St.*

*Cyr* squarely settled the issue on appeal. *See Pottinger v. Reno,* 2000 WL 1864477 (2d Cir. Dec. 18, 2000).

jurisprudence." *Landgraf*, 511 U.S. at 265, 114 S.Ct. 1483. "Elementary considerations of fairness dictate that individuals should have an opportunity to know what the law is and to conform their conduct accordingly; settled expectations should not be lightly disrupted." *Id.* at 265, 114 S.Ct. 1483. Unless Congress clearly expresses its intent to the contrary, we presume that a law has no retroactive application to conduct predating it. *See Hughes Aircraft Co. v. United States*, 520 U.S. 939, 946, 117 S.Ct. 1871, 138 L.Ed.2d 135 (1997). Retroactivity analysis requires two steps. First we ask whether Congress "expressly prescribed the statute's proper reach." *Martin v. Hadix*, 527 U.S. 343, 352, 119 S.Ct. 1998, 144 L.Ed.2d 347 (1999) (citation omitted). If not, we proceed to the second step and determine whether applying the law to pre-enactment conduct would have a retroactive effect. *See id.* "If so, then in keeping with our 'traditional presumption' against retroactivity, we presume that the statute does not apply to that conduct." *Id.* (citation omitted).

The district court below extended our holding and discussion of retroactivity principles in *Henderson v. Immigration & Naturalization Serv.*, 157 F.3d 106 (2d Cir.1998), to the instant case. At issue in *Henderson* was the retroactive application of Section 440(d) to those aliens whose deportation cases began before AEDPA's enactment. *See Henderson*, 157 F.3d at 128. We held Section 440(d) posed no bar to Section 212(c) hearings when the deportation proceedings began before AEDPA's enactment. *See id.* at 130–31. As the district court recognized, we expressly declined in *Henderson* to reach the issue we face today: whether Section 440(d) applies to pre-AEDPA criminal conduct. *See id.* at 129 n. 28. The district court then extended our holding in *Henderson*, and held that Congress knew how to make Section 440(d) explicitly apply retroactively but did not do so. *See Dunbar*, 64 F.Supp.2d at 54. The district court then inferred that Congress did not intend to apply the section retroactively, as we did in *Henderson*.

*See id.; see also Henderson*, 157 F.3d at 129.

We hold that the district court's extension of *Henderson* was erroneous because Domond's case raises a different issue than the one in *Henderson*. Here, the question is whether the lack of discretionary relief applies to aliens whose criminal conduct pre-dates enactment of AEDPA. As this and other circuits have concluded, "[w]hen the past conduct under the *Landgraf* analysis changes from the commencement of removal proceedings to the conviction or criminal conduct ... Congress's intent whether to apply [Section 440(d)] retrospectively is ambiguous." *St. Cyr*, 229 F.3d at 413; *see also Requena–Rodriguez v. Pasquarell*, 190 F.3d 299, 307–308 (5th Cir.1999); *DeSousa v. Reno*, 190 F.3d 175, 186–187 (3d Cir.1999); *Jurado–Gutierrez v. Greene*, 190 F.3d 1135, 1150 (10th Cir. 1999). Because "different provisions in [AEDPA] allow one to draw a negative implication in favor of and against applying AEDPA § 440(d)" retroactively, the statute is ambiguous. *Jurado–Gutierrez*, 190 F.3d at 1150.

 Having found the statute ambiguous, we next determine if the statute has a retroactive effect. *See Landgraf*, 511 U.S. at 280, 114 S.Ct. 1483. Statutes are not impermissibly retroactive merely when courts apply them to a case arising from conduct antedating the statute's enactment. *See id.* at 269, 114 S.Ct. 1483. Rather, a statute is retroactive if it imposes "new legal consequences to events completed before its enactment." *Id.* at 270, 114 S.Ct. 1483. Courts should rely on "familiar considerations of fair notice, reasonable reliance, and settled expectations" for guidance in determining retroactive effect. *Id.*

We find that Section 440(d) imposes no new legal consequences on aliens like Domond whose criminal conduct pre-dates AEDPA, but whose convictions came after AEDPA's enactment. " '[I]t is the conviction, not the underlying criminal act, that

triggers the disqualification from § 212(c) relief.'" *St. Cyr*, 229 F.3d at 418 (quoting *Mattis v. Reno*, 212 F.3d 31, 37 (1st Cir. 2000)). While the underlying criminal conduct is crucial to the conviction, it is not the conduct that bars relief under the statutory scheme.[3] Upon conviction, the punishment for the underlying criminal conduct was and remains some term of imprisonment plus deportation. Domond argues that because the Attorney General traditionally granted a substantial number of Section 212(c) waivers, the loss of a Section 212(c) hearing is significant. The difference, according to Domond, is that before AEDPA deportation was only possible and after AEDPA deportation is certain. This simply is not the case. Deportation was always the consequence. Even if the Attorney General granted many of the Section 212(c) waivers, that relief always was discretionary, not mandatory. *See, e.g., Jay v. Boyd*, 351 U.S. 345, 354, 76 S.Ct. 919, 100 L.Ed. 1242 (1956) (possible relief from deportation "manifestly not a matter of right" but "is in all cases a matter of grace"); *Cato v. Immigration & Naturalization Serv.*, 84 F.3d 597, 599–600 (2d Cir.1996) (Section 212(c) relief is a privilege).

Our analysis here is similar to the one we performed in *United States v. Koziel*, 954 F.2d 831 (2d Cir.1992), which involved an analogous set of facts. In *Koziel*, the lower court denied aliens who had been convicted of certain crimes the opportunity to apply for Judicial Recommendations Against Deportation ("JRADs"), a type of discretionary relief available to aliens post-conviction as a means of avoiding deportation. *See Koziel*, 954 F.2d at 833. Congress eliminated JRADs after the aliens' offense conduct, but before the aliens pled guilty to the crimes in question and before they could apply for relief. *Id.* We found no retroactivity problem, rea-

soning that the repeal of JRADs "does not make a person deportable for acts for which he or she could not have been deported at the time they occurred; and it does not deprive him or her of any entitlement, for the district court's decision whether or not to grant a JRAD was entirely discretionary." *Id.* at 835. We face a similar situation here, as waivers available from Section 212(c) hearings were purely discretionary. Therefore, loss of the Section 212(c) hearings, while clearly a hardship, does not impose a new legal consequence on Domond's pre-AEDPA criminal conduct.

Nor does Domond's loss of the Section 212(c) hearings in these circumstances raise the same reliance and expectation concerns raised in *St. Cyr*. There, both criminal conduct and guilty pleas pre-dated AEDPA. Reliance and expectation interests are especially strong in such circumstances, because an alien is likely to consider the immigration consequences when deciding whether and how to plead. *See St. Cyr*, 229 F.3d at 418–19. "[A] legal resident who is charged with a crime that renders him removable from the United States carefully considers the immigration consequences of his or her conviction and, specifically, the availability of discretionary relief from removal." *Id.* at 419. Here, it cannot reasonably be argued that aliens committed crimes in reliance on a hearing that might possibly waive their deportation. As we noted in *St. Cyr*, "[i]t would border on the absurd to argue" that Domond would have decided not to commit a crime if he had known that he not only could be imprisoned, but also could face deportation without the availability of a discretionary waiver of deportation. *Id.* at 418 (citation omitted). We therefore find no retroactive effect in applying AEDPA § 440(d) to Domond.

---

**3.** IIRIRA changed and expanded the definition of "aggravated felony," and added new crimes for which aliens could be deported. *See* 8 U.S.C. § 1101(a)(43) (Supp. IV 1998). However, as Domond's conviction fell within

the definition of an "aggravated felony" both before and after IIRIRA, we decline to reach the issue of the new definition's retroactive effect when applied to criminal conduct committed before IIRIRA's enactment.

## C. Ex Post Facto

 In an alternative argument, Domond contends application of Section 440(d) to his pre-AEDPA criminal conduct violates the Constitution's *ex post facto* clause because deportation is "quasi-penal" in character. This argument fails. There is "[a] long and unwavering line of authority" establishing "that statutes retroactively setting criteria for deportation do not violate the *ex post facto*" clause. *Koziel*, 954 F.2d at 834. · The *ex post facto* clause forbids retroactive application of penal legislation, not civil legislation, and "[d]eportation, however severe its consequences, has been consistently classified as a civil rather than a criminal procedure." *Id.*, (*quoting Harisiades v. Shaughnessy*, 342 U.S. 580, 594, 72 S.Ct. 512, 96 L.Ed. 586 (1952)).

## D. Equal Protection

Finally, Domond argues that Section 440(d) violates his equal protection rights as an alternative ground for affirming the district court. He bases this claim on a distinction Congress chose to make between two classes of resident aliens who committed the same crimes. Section 440(d) bars any discretionary relief for aliens who face deportation because of their crimes. However, certain aliens who are excluded—prevented from re-entering the United States after they acquiesced to removal—may still seek discretionary relief. *See* INA § 212(h); *codified at* 8 U.S.C. § 1182(h). Thus, Congress chose to treat differently aliens who committed the same crimes, based on whether those aliens left the country voluntarily or were deported. Domond argues that the distinction is irrational. We disagree.

 Due process and equal protection guarantees clearly extend to aliens as well as United States citizens. *See Yick Wo v. Hopkins*, 118 U.S. 356, 369, 6 S.Ct. 1064, 30 L.Ed. 220 (1886). Distinctions between different groups of aliens are subject to rational basis review. *See Francis*, 532 F.2d at 272.

 Under this slight standard of review, the distinctions made by the government are given "a strong presumption of validity." *Heller v. Doe*, 509 U.S. 312, 319, 113 S.Ct. 2637, 125 L.Ed.2d 257 (1993). The government need only articulate a rational reason for making the distinction, and need not provide any evidence to support the rationality of the reason. *See id.* at 320, 113 S.Ct. 2637. Further, the reason need not be one actually considered by Congress. *See id.* The role of the courts is to judge only the constitutionality of Congress's actions. *See id.*

 We join with every other Circuit which has considered the issue in finding that the government articulated a rational reason for distinguishing between the two classes of aliens. As aptly stated by the Third Circuit:

> The legislative history of AEDPA clearly demonstrates that Congress's goal in amending § 212(c) was to enhance "the ability of the United States to deport criminal aliens." In order to aid the United States in expelling criminal aliens from the country, Congress rationally could have decided to encourage such aliens to voluntarily leave the country as a carrot to a potential waiver of removal when they sought reentry. Creating such an incentive may have appeared desirable to Congress for several reasons. First, Congress could have rationally speculated that not all aliens who voluntarily left the country would return. Second, because exclusion proceedings provide fewer procedural protections than deportation proceedings, Congress may have reasoned that encouraging aliens to seek waivers through the exclusion process would decrease the United States' administrative costs in expelling criminal aliens.

*DeSousa*, 190 F.3d at 184 (distinguishing *Francis*, 532 F.2d 268) (citations omitted); *see also Requena–Rodriguez*, 190 F.3d at 309; *Jurado–Gutierrez*, 190 F.3d at 1153;

*Turkhan v. Perryman,* 188 F.3d 814, 828 (7th Cir.1999); *LaGuerre v. Reno,* 164 F.3d 1035, 1041 (7th Cir.1998). Thus, we find that Section 440(d) does not violate Domond's equal protection rights.

## CONCLUSION

For the reasons given above, we reverse the lower court. Those who lack any avenue to contest their deportation face hardships, but the correct venue in which they can seek statutory reform is Congress, not the courts.