**Sheldon Andre BARTON, Petitioner,**

v.

**John ASHCROFT, Attorney General of the United States, et al., Respondents.**

**No. 3:01CV881(GLG).**

United States District Court, D. Connecticut.

Oct. 25, 2001.

Sheldon Andre Barton, Oakdale, LA, pro se.

Deborah R. Douglas, U.S. Atty's Office, New Haven, CT, for Defendants.

## ORDER ON PETITION FOR WRIT OF HABEAS CORPUS

GOETTEL, District Judge.

Petitioner, Sheldon Andre Barton, has filed a *pro se* Petition for Writ of Habeas Corpus. On July 20, 2001, this Court denied Petitioner's Motion for Emergency Stay of Deportation on the basis that the Board of Immigration Appeals (the "BIA") had not yet ruled on Petitioner's appeal. The Court also denied Respondents' motion to dismiss the Petition for Habeas Corpus Relief and ordered Respondents to file a brief addressing the merits of Petitioner's constitutional claims. Since the BIA has now ruled on Petitioner's appeal, this Court may consider his Petition.

## BACKGROUND

In a decision dated April 30, 2001, the Immigration Judge (the "IJ") found Peti-
tioner deportable under section 237(a)(2)(A)(ii) and (iii) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1227(a)(2)(A)(ii) and (iii), based upon his conviction of an aggravated felony and his conviction of two crimes involving moral turpitude. During the administrative proceedings. Petitioner claimed derivative citizenship under the Child Citizen Act of 2000 ("CCA") which repealed section 321 of the INA (8 U.S.C. § 1432) and amended section 320 (8 U.S.C. § 1431). However, section 104 of the new law provided that the amendment was to take effect 120 days after the date of enactment, *viz.*, February 27, 2001, and would apply to individuals who satisfied the requirements of section 320 [1] on that date. Since Petitioner did not meet all of the requirements as of the effective date,[2] the IJ held that the new law did not apply to him. Consequently, the IJ held that Petitioner did not derive United States citizenship and was removable as charged. The IJ ordered him deported from the United States to Jamaica. (Order of the Immigration Judge dated April 30, 2001, at 3.) On July 31, 2001, the BIA affirmed the IJ's decision and dismissed Petitioner's appeal.

## DISCUSSION

### I.  Derivative Citizenship

Petitioner appears to have abandoned his prior assertion that the amended INA section 320 should be applied retroactively. Instead, he now argues that he is entitled to derived citizenship under INA section

---

1.  The amended section 320 provides that a child born outside the United States automatically becomes a citizen when three conditions are met:  (a) at least one parent of the child is a United States citizen, whether by birth or naturalization;  (b) the child is under eighteen years of age;  and (c) the child is residing in the United States in the legal and physical custody of the citizen parent pursuant to a lawful admission for permanent residence. *See* 8 U.S.C. § 1431 (2000).

2.  On the effective date, Petitioner was well over the age of eighteen and was not in the legal and physical custody of his father.

321, which was repealed effective February 27, 2001. Section 321(a) provides:

A child born outside of the United States of alien parents ... becomes a United States citizen upon fulfillment of the following conditions:

\* \* \* \* \* \*

(3) The naturalization of the parent having legal custody of the child where there has been legal separation of the parents or the naturalization of the mother if the child was born out of wedlock and the paternity of the child has not been established by legitimation, and if

(4) Such naturalization takes place while such child is under the age of eighteen years; and

(5) Such child is residing in the United States pursuant to a lawful admission for permanent residence at the time of the naturalization of ... the parent naturalized under clause ... (3) of this subsection, or thereafter begins to reside permanently in the United States while under the age of eighteen years.

■ 8 U.S.C. § 1432 (1988), repealed by the Child Citizenship Act of 2000, Pub.L. 106–395, § 103(a), 114 Stat. 1632 (2000). Petitioner argues that he met these requirements before he turned eighteen and is, therefore, a U.S. citizen. Respondents point out that Petitioner did not claim derivative citizenship pursuant to section 321(a)(3) during the administrative proceedings, and asserts that Petitioner improperly raises this claim for the first time in this Court. We do not accept Respondents' position. The Second Circuit has repeatedly held that the federal district courts have jurisdiction to hear habeas corpus petitions filed by aliens seeking relief from deportation orders under 28 U.S.C. § 2241. *See Calcano–Martinez v. INS*, 232 F.3d 328, 333–34 (2d Cir.2000), *cert. granted*, 531 U.S. 1108, 121 S.Ct. 849, 148 L.Ed.2d 733 (2001); *Henderson v. INS*, 157 F.3d 106, 118–22 (2d Cir.1998). Habeas relief extends to all issues that are purely legal in nature, including constitutional challenges. *Calcano–Martinez*, 232 F.3d at 334 (citing *Henderson*, 157 F.3d at 122). In order to determine whether Petitioner's detention and pending deportation is unconstitutional, we must first determine whether he is a citizen under section 321 as he claims, notwithstanding the fact that he did not rely on that section during the administrative proceedings.

■ According to the record, Petitioner's father was naturalized in February 1988, shortly before Petitioner's tenth birthday. (Resp't's Resp. to Pet. For Writ of Habeas Corpus. Ex. D.) Thus, Petitioner meets the condition in section 321(a)(4). Similarly, Petitioner meets the condition in section 321(a)(5) because he began to reside permanently in the United States in 1992, some four years after his father became a citizen, but while he was still under the age of eighteen. (Resp't's Resp. to Pet. For Writ of Habeas Corpus, Ex. A.) Since Petitioner meets the conditions in clauses (4) and (5), he is a citizen if one of the two options in section 321(a)(3) applies. Petitioner does not satisfy the latter option, involving his mother's naturalization, not only because his mother did not become a U.S. citizen, but also because his paternity has been established by legitimation.[3] He does not meet the former op-

---

**3.** Although Petitioner's parents were never married to each other, on April 11, 1988, his father's name was added by the Registrar General of Jamaica to Petitioner's birth certif-icate. Although neither party discussed this issue, it appears that, under Jamaican law, this action means that Petitioner's paternity

tion, involving naturalization of the parent with legal custody, for two reasons. First, his parents are not "legally separated" because they were never joined in marriage. *See Wedderburn v. INS*, 215 F.3d 795, 799 (7th Cir.2000) (the INS "determines the . . . dissolution of wedlock using the legal rules of the place where the marriage was . . . dissolved" and interprets "legal separation" as "a termination of the martial status"). Petitioner has not offered any argument that it is possible for couples who were never married to each other to be "legally separated" under Jamaican law. Second, it is not clear that Petitioner was ever in his father's "legal custody." At the time his father was naturalized, Petitioner was living in Jamaica with his mother. Although Petitioner's father petitioned for his admission to the United States, Petitioner, by his own admission, lived with and was raised by his sister, not by his father. (Resp't's Resp. to Pet. For Writ of Habeas Corpus, Ex. H .) For these reasons, Petitioner does not meet the conditions set forth in section 321(a)(3) and therefore did not acquire derivative citizenship when his father became a naturalized United States citizen or at any time thereafter.[4]

## II. *Equal Protection*

Petitioner argues that section 321(a)(3) violates the equal protection guarantee embedded in the Due Process Clause of the Fifth Amendment because it "creates an invidious classification between naturalized mothers of illegitimate children, who can pass on the benefit of citizenship, and naturalized fathers of legitimated children,

who cannot." Petitioner relies chiefly on *Miller v. Albright*, 523 U.S. 420, 118 S.Ct. 1428, 140 L.Ed.2d 575 (1998), a case in which the Supreme Court reviewed the constitutionality of INA section 309, 8 U.S.C. § 1409, a section substantially similar to section 321, except that it deals with children born outside the United States and out of wedlock to an American parent. Section 309(a) requires that by the age of eighteen, such a child born to an American *father* must present formal proof of paternity in order to obtain citizenship. By contrast, under section 309(c), a child born abroad and out of wedlock to an American *mother* automatically obtains citizenship at birth. *See* 8 U.S.C. §§ 1409(a), (c) (1988). Until recently, the holding and precedential value of *Miller* were unclear, especially with respect to the applicable standard of review for INA statutes that contain gender classifications, because the judgment was reached by five Justices issuing five separate opinions, with three Justices dissenting. However, in *Nguyen v. INS*, 533 U.S. 53, 121 S.Ct. 2053, 150 L.Ed.2d 115 (2001), the Supreme Court held that section 309, which contains a gender-based distinction like the one in section 321(a)(3), did not violate the equal protection guarantee embedded in the Due Process Clause of the Fifth Amendment. *Id.* at 2058. Subjecting section 309 to heightened or intermediate scrutiny, the Court held it was indeed substantially related to achieving two important governmental objectives, *i.e.*, (i) ensuring that a biological parent-child relationship exists, and (ii) ensuring that the child and citizen parent

---

was "legitimated ." *See Wedderburn v. INS*, 215 F.3d 795, 797 (7th Cir.2000).

**4.** In fact, it appears it would be impossible for Petitioner to meet the conditions set forth in clause (3)—because he was born out of wedlock but his paternity was established by legi-

timation, he could only become a citizen under section 321(a)(3) if he were in his father's legal custody and his parents were "legally separated." Since his parents were never married, they could never be "legally separated."

have "some demonstrated opportunity or potential to develop not just a relationship that is recognized . . . by law, but one that . . . provide[s] a connection between child and citizen parent and, in turn, the United States." *Id.* at 2060–63. Section 321(a)(3) promotes the same important governmental interests in cases where citizenship is to be automatically conferred on children born outside of the United States, to a parent or parents who later become United States citizens.

In the instant case, Petitioner was "legitimated" under Jamaican law, and he is treated by section 321(a)(3) as if he were born in wedlock. Consequently, he could not have derived citizenship from his mother, even if she had become a United States citizen before his eighteenth birthday, since legitimate children "become citizens if both parents naturalize, if the surviving parent naturalizes, or if the parent having 'legal custody' naturalizes following the parents, 'legal separation.' Nothing depends on the sex of the parent (or parents) who naturalize or have custody." *Wedderburn,* 215 F.3d at 802. A child born out of wedlock who had never been legitimated might have a gender-based equal protection claim, albeit a losing one in light of *Nguyen,* but a legitimated child such as Petitioner has no such claim at all. *See Wedderburn,* 215 F.3d at 802. Here, as in *Wedderburn,* it is legitimation, not gender, that makes the difference. *Id.*

Petitioner also argues that section 321(a)(3) makes a distinction based on legitimacy which calls for heightened or intermediate scrutiny by the courts. However, Petitioner's attack on that ground fails for the same reason his attack on the gender-based classification fails. Moreover, section 321(a)(3) does not discrimi-

nate *against* children born out of wedlock; instead, it gives them an "extra route to citizenship, one not enjoyed by legitimate (or legitimated) offspring." [5] *Wedderburn,* 215 F.3d at 802.

Petitioner suggests that the father of a legitimated child can never pass citizenship to his child under section 321(a)(3). This is simply not true. The father of a legitimated child automatically passes citizenship to his child if (1) the mother also becomes a citizen, or (2) if the mother has died, or (3) if the father acquired legal custody of the child and is legally separated from the mother. Thus, the statute treats a legitimated child as it would a legitimate child. It is true that Petitioner falls into a small category of children who could never meet the requirements of section 321(a)(3) because his parents were not, and could never be, legally separated. However, as the Seventh Circuit succinctly states, the Constitution "does not require Congress to anticipate and accommodate every possibility created by foreign matrimonial law ." *Wedderburn,* 215 F.3d at 802. Moreover, Petitioner's father could have used section 322 to obtain citizenship for his son, *see* 8 U.S.C. § 1433 (1994), and Petitioner, as a legal permanent resident, could have applied for citizenship himself.

## III. *Order of removal*

Since we find that Petitioner is not a citizen, we must now consider Petitioner's equal protection challenge with respect to the application of INA section 212(h), codified at 8 U.S.C. § 1182(h). Petitioner claims that he is entitled to a family hardship waiver hearing under this section, which provides that the Attorney General may grant a discretionary waiver from re-

---

**5.** It is true, however, that section 321(a)(3) makes it slightly more difficult for children born out of wedlock to acquire citizenship automatically through one naturalized parent if both parents are still alive, because of the "legal separation" requirement.

moval if a removable alien is the spouse, son, daughter, or parent of a United States citizen or legal permanent resident and the alien's denial of admission would result in "extreme hardship to the United States citizen or lawfully resident spouse, parent, son or daughter of such alien." 8 U.S.C. § 1182(h)(1)(B). In addition, the Attorney General must consent to a removable alien's application or reapplication for a visa, for admission to the United States, or for an adjustment of status. *Id.* § 1182(h)(2). In 1996, this section was amended by section 348(a) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub.L. No. 104–208, 110, Stat.2009–546, which added the following language:

No waiver shall be granted under this subsection in the case of an alien who has previously been admitted to the United States as an alien lawfully admitted for permanent residence if either since the date of such admission the alien has been convicted of an aggravated felony or the alien has not lawfully resided continuously in the United States for a period of not less than 7 years immediately preceding the date of initiation of proceedings to remove the alien from the United States.

8 U.S.C. § 1182(h).

As amended, section 212(h)(1)(B) provides for a potential discretionary waiver for a resident alien who claims extreme family hardship, as long as the alien has not been convicted of an aggravated felony. Discretionary relief is also available under section 212(h)(1)(B) to a nonresident alien, as long as he is subject to removal in a proceeding under INA section 240, 8 U.S.C. § 1229a. However, a nonresident alien is not eligible for any discretionary relief or waiver of removal if he is subject to removal in an expedited proceeding under INA section 238(b), 8 U.S.C. § 1228(b). *See* 8 U.S.C. § 1228(b)(1), (b)(5).[6]

■ Petitioner did not seek discretionary relief during the administrative proceedings.[7] Generally, an alien must exhaust all administrative remedies "available as of right" before seeking judicial review of a final order of removal. *See* 8 U.S.C. § 1252(d)(1). This requirement is designed to assure that administrative agencies have "a full opportunity to resolve a controversy or correct [their] own errors before judicial intervention...." *Sagermark v. INS*, 767 F.2d 645, 648 (9th Cir.1985); *see also Mohammad v. Slattery*, 842 F.Supp. 1553, 1557 (S.D.N.Y.1994). However, exhaustion is not required under certain circumstances, for example, where an administrative appeal would be futile, or where the claimant raises constitutional claims that could not be resolved through the administrative process. *See* 8 U.S.C. § 1252(d); *Howell v. INS*, 72 F.3d 288, 291 (2d Cir.1995); *Maria v. McElroy*, 68 F.Supp.2d 206, 216 (E.D.N.Y.1999). It would have been futile for Petitioner to raise an equal protection claim with respect to section 212(h) during the administrative proceedings because the IJ and BIA do not have the authority to adjudicate

---

**6.** An IJ may, at the INS's request, discontinue § 240 removal proceedings against a criminal nonresident alien so that the INS can commence expedited proceedings under § 238(b). *See* 8 C.F.R. § 238.1(e).

**7.** In fact, Petitioner indicated that he intended to seek a "withholding" of removal under INA section 241(b)(3) and Article 3 of the Convention Against Torture. (Removal Proceedings Tr. at 13.) Later, Petitioner, through his attorney, told the IJ that he did not seek a withholding from removal. (Removal Proceedings Tr. at 15–16.)

constitutional challenges to the INA. *See Arango–Aradondo v. INS*, 13 F.3d 610, 614 (2d Cir.1994); *Matter of C-*, 20 I. & N. Dec. 529, 532 (BIA 1992); *Matter of Anselmo*, 20 I. & N. Dec. 25, 30 (BIA 1989). Moreover, several courts have held that exhaustion is statutorily required under section 1252(d)(1) only for appeals to Courts of Appeals of final orders of removal. *See Jankowski v. INS*, 138 F.Supp.2d 269, 275 (D.Conn. 2001) (holding that section 1252(d) applies only to judicial review of final orders of removal in the Courts of Appeals); *Welch v. Reno*, 101 F.Supp.2d 347, 351 (D.Md.2000) (holding that exhaustion is not required if a habeas petitioner challenges his continued detention); *Galvez v. Lewis*, 56 F.Supp.2d 637, 644 (E.D.Va.1999) (exhaustion is not required if a habeas petitioner challenges conditions imposed on bond); *Rowe v. INS*, 45 F.Supp.2d 144, 145–46 (D.Mass.1999) (same).

Petitioner claims that section 212(h) is unconstitutional because it allows an aggravated felon who is not admitted for permanent residence (an illegal alien, for example) to apply for a waiver under section 212(h) while an aggravated felon who is a lawful permanent resident ("LPR") is not given the same opportunity. Aliens have challenged section 212(h)'s constitutionality in several Circuits without success. The Seventh Circuit recently held that the distinction between LPRs and non-LPRs in section 212(h) was both rational and justifiable, and therefore did not violate the petitioner's equal protection rights. *See Lara–Ruiz v. INS*, 241 F.3d 934 (7th Cir.2001). The court gave the following rationales for its holding: (1) Congress enacted reforms through the IIRIRA in order to expedite removal of criminal aliens and eliminating 212(h) relief for aggravated felon LPRs would eradicate one source of delay; (2) although it might have been fairer to also eliminate 212(h) relief for non-LPR aggravated felons, the step taken by Congress was a first rational step toward achieving the legitimate goal of quickly removing aliens who commit serious crimes; (3) LPRs enjoy rights and privileges not enjoyed by non-LPRs and have closer ties to the United States through family and employment relationships; consequently, Congress may have rationally concluded that LPRs who commit serious crimes despite these factors are poor candidates for relief from removal. *Id.* at 947–948. The Eleventh, Ninth and Fourth Circuits have also held that section 212(h) does not violate equal protection guarantees. *See Moore v. Ashcroft*, 251 F.3d 919, 925 (11th Cir.2001) (relying on *Lara–Ruiz*); *Finau v. INS*, 2001 WL 902491 (9th Cir. Aug.10, 2001). (unpublished decision upholding section 212(h) on the basis that removable LPRs present in the United States are not similarly situated to excludable LPRs who have left the country or illegal aliens present in the United States); *Umanzor–Lazo v. INS*, 178 F.3d 1286 (4th Cir.1999) (unpublished decision upholding the statute in summary form).

The Second Circuit Court of Appeals has not yet ruled on the constitutionality of section 212(h).[8] However, in *Jankowski v.*

---

**8.** The Second Circuit, however, upheld § 440(d) of the Anti–Terrorism and Effective Death Penalty Act of 1996, which eliminated INA § 212(c) discretionary waiver hearings for aliens convicted of certain crimes. *See Domond v. INS*, 244 F.3d 81, 87–88 (2d Cir. 2001). Section 440(d) barred discretionary relief for resident criminal aliens facing deportation but allowed resident criminal aliens who left voluntarily to seek discretionary relief when trying to return to the United States. The court in *Domond* held that the distinction between such removable and excludable aliens was rational. *See id.* (holding that

*INS*, 138 F.Supp.2d 269 (D.Conn.2001), the District Court held that the distinction between LPRs and non-LPRs in section 212(h) "simply defie[d] logic" and was indeed irrational, thereby violating the equal protection clause of the Constitution. *Id.* at 285 (quoting *Song v. INS*, 82 F.Supp.2d 1121, 1134 (C.D.Cal.2000)). *Jankowski* is currently on appeal to the Second Circuit Court of Appeals and is scheduled for oral argument as early as January 2002. The Court concludes that it would be prudent to grant Respondents' request that this Court hold in abeyance a decision on this specific issue pending the outcome of the appeal in *Jankowski* .

Accordingly, the Court STAYS Petitioner's deportation and HOLDS IN ABEYANCE the Petition for Habeas Corpus Relief pending the Second Circuit Court of Appeals' decision in *Jankowski v. INS*, 138 F.Supp.2d 269 (D.Conn.2001). The Court also DENIES Petitioner's request to be released from detention pending final resolution of his Petition. The Court does not have the authority to grant such relief in this case. *See* 8 U.S.C. §§ 1226(c), 1231(a)(1),(2), 1231(a)(6).

SO ORDERED.

Congress rationally could have decided to encourage criminal aliens to voluntarily leave the country as an incentive to a potential waiver of removal when they sought to return). Congress enacted IIRIRA in September 1996, repealing § 212(c) altogether.