Judge STRAUB concurs in a separate opinion.
JOHN M. WALKER, JR., Circuit Judge:
Petitioner, a legal permanent resident alien, seeks review of a decision of the Board of Immigration Appeals affirming the immigration judge’s denial of cancellation of removal for failure to satisfy the seven-year continuous residence requirement of INA § 240A(d), 8 U.S.C. § 1229b. Because petitioner’s removal proceedings were initiated after the effective date of the Illegal Immigration Reform and Immigration Responsibility Act of 1996 (“IIRI-RA”), the agency retroactively applied IIRIRA’s permanent provisions, including the “criminal-offense stop-time rule,” 8 U.S.C. § 1229b(d)(l)(B). The agency determined that pursuant to this rule, petitioner’s commission of a criminal offense on April 9, 1995 terminated his period of continuous residence one month before he could achieve the requisite seven years. Petitioner asks us to review that determination.
BACKGROUND
Petitioner Leonardo Zuluaga Martinez (“Zuluaga”), a native and citizen of Colombia, entered the United States in April 1985. He became a legal permanent resident on December 1, 1990. On April 9, 1995, Zuluaga was arrested in Massachusetts for possession of heroin. This led to his conviction, in May 1998, based on a guilty plea to illegal possession of drugs and three counts of assault and battery, under Massachusetts law, for which he was sentenced to an 18 month term of imprisonment.
In June 1998, the Immigration and Naturalization Service (“INS”) served Zuluaga with a notice to appear, charging him as removable under Immigration and Nationality Act (“INA”) § 237(a)(2)(B)®, for having “been convicted of a violation of ... any law or regulation- of a State ... relating to a controlled substance.” 8 U.S.C. § 1227(a)(2)(B)®. In March 1999, petitioner was convicted a second time for illegal possession of heroin in violation of Massachusetts law, following an arrest on November 21, 1997. The INS thereupon charged Zuluaga as being additionally removable as an aggravated felon pursuant to INA § 237(a)(2)(A)(iii), 8 U.S.C. § 1227(a)(2)(A)(iii), based on the May 1998 convictions for assault and battery, and pursuant to INA § 237(a)(2)(B)®, based on the March 1999 heroin conviction.
In May 1999, at a hearing before the Immigration Judge (“U”), Zuluaga admitted to all of the above convictions. The IJ then found (1) that Zuluaga was removable from the United States and (2) that the *367 assault and battery offenses were aggravated felonies; the latter making Zuluaga statutorily ineligible for cancellation of removal under INA § 240A(a). See 8 U.S.C. § 1229b(a)(3). The IJ ordered Zuluaga removed to Colombia.
Zuluaga appealed to the Board of Immigration Appeals (“BIA”). In October 1999, while that appeal was pending, the Massachusetts state court granted Zuluaga’s motion to vacate his assault and battery convictions because the trial court had failed to warn him about the immigration consequences of the plea. The BIA initially dismissed Zuluaga’s appeal, but subsequently granted his motion to reopen based on Massachusetts’s vacatur to allow Zuluaga to pursue cancellation of removal.
The IJ, on remand, then determined what lies at the heart of this appeal: that Zuluaga was still statutorily ineligible for cancellation of removal because he had failed to achieve seven years of continuous lawful permanent residence, as required under INA § 240A(a)(2), 8 U.S.C. § 1229b(a)(2). The IJ found that because Zuluaga had entered the country illegally without inspection, his period of lawful residence did not begin until May 4, 1988, the date he applied for temporary resident status. The IJ further determined that by operation of the stop-time rule of INA § 240A(d)(1), 8 U.S.C. § 1229b(d)(1)(B), which became effective according to IIRI-RA on April 1, 1997, Zuluaga’s period of continuous residence ended on April 9, 1995 when he committed his first drug offense, a month short of the seven years of continuous lawful permanent residence necessary for cancellation eligibility. The IJ denied Zuluaga’s application for cancellation of removal and the BIA summarily affirmed.
The district court, upon a habeas petition, returned the case to the IJ, via the BIA, to determine whether Zuluaga might have been admitted earlier than May 4, 1988. But, after considering further evidence on the issue, the IJ confirmed his original determination, again denied relief, and ordered removal.
Zuluaga then moved for reconsideration of the IJ’s decision, not arguing that the May 4, 1998 starting date for the seven year period was improper, but that the application of the stop-time rule which cut off the period just short of the seven years was impermissibly retroactive. The IJ declined reconsideration, relying on the BIA’s decision in In re Perez, 22 I. & N. Dec. 689 (B.I.A.1999) (en banc), which had applied the stop-time rule to offenses preceding the passage of IIRIRA.
In November 2003, the BIA rejected Zuluaga’s appeal. The BIA affirmed the IJ’s conclusion that Zuluaga had failed to demonstrate the requisite seven years of continuous residence prior to the commission of his crime on April 9, 1995. Relying also on In re Perez, the BIA concluded that the stop-time rule applied to Zulua-ga’s situation and precluded cancellation of removal. Zuluaga timely filed a petition for review of the BIA’s decision.
DISCUSSION
Zuluaga does not challenge the agency’s factual determination that his continuous residence “clock” began to run on May 4, 1988, but he argues that it did not stop on April 9, 1995. Zuluaga maintains that the criminal-offense stop-time rule, which became effective on April 1, 1997, is imper-missibly retroactive as applied to criminal conduct that preceded its enactment. Zu-luaga asks us to conclude (1) that the commission of the offense on April 9, 1995 did not stop the accrual of his seven years of permanent residence and (2) that he is therefore eligible for cancellation of removal. As a consequence, he asks us to *368 remand to the BIA for further remand to the IJ for a determination as to whether a favorable exercise of discretion is warranted.
A. Immigration Framework in 1995
Under the immigration laws in effect in April 1995, when Zuluaga committed the offense at issue, legal permanent residents who were subject to deportation, but who had resided in the United States for seven consecutive years, were eligible to apply for a discretionary waiver of deportation under INA § 212(c). See 8 U.S.C. § 1182(c) (repealed 1996) (“Aliens lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelin-quished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General.... ”). Although “ § 212(c) was literally applicable only to exclusion proceedings,” the BIA interpreted the provision “to authorize any permanent resident alien with ‘a lawful unrelin-quished domicile of seven consecutive years’ to apply for a discretionary waiver from deportation.” INS v. St. Cyr, 533 U.S. 289, 295, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001) (citing In re Silva, 16 I. & N. Dec. 26, 30 (B.I.A.1976) (adopting position of Francis v. INS, 532 F.2d 268 (2d Cir.1976))).
“The decision of whether to award section 212(c) relief involved only a balancing of the ‘adverse factors evidencing an alien’s undesirability as a permanent resident with the social and humane considerations presented in his behalf to determine whether the granting of [a section 212(c) waiver] appear[ed] in the best interests of this country.’ ” Kai Tung Chan v. Gantner, 464 F.3d 289, 295 (2d Cir.2006) (per curiam) (quoting In re Marin, 16 I. & N. Dec. 581, 584 (B.I.A.1978)) (alterations in original). Although the decision to grant § 212(c) relief was ultimately a discretionary one, a “substantial percentage” of applications were granted. St. Cyr, 533 U.S. at 296, 121 S.Ct. 2271 (noting that between 1989 and 1995, over 10,000 applicants obtained § 212(c) relief).
Under the pre-IIRIRA system then in existence, aliens accrued time toward their required period of continuous residence and physical presence until they applied for relief from deportation. See Arenas-Yepes v. Gonzales, 421 F.3d 111, 115 n. 4 (2d Cir.2005). This gave aliens an incentive to delay their deportation proceedings until they could fulfill the requisite seven years. See Suassuna v. INS, 342 F.3d 578, 581 (6th Cir.2003). Before IIRIRA, the accrual of time towards seven years of continuous residence was not stopped by the commission of a crime.
B. The Illegal Immigration Reform and Immigration Responsibility Act of 1996
IIRIRA, which was enacted on September 30, 1996 and went into effect on April 1, 1997, eliminated the § 212(c) waiver, and replaced it with cancellation of removal, “a more strict procedure.” United States v. Johnson, 391 F.3d 67, 70 (2d Cir.2004). Under INA § 240A(a), which replaced INA § 212(c), a legal permanent resident alien must satisfy three conditions to qualify for cancellation of removal relief: the alien (1) must have been “lawfully admitted for permanent residence for not less than 5 years,” (2) must have “resided in the United States continuously for 7 years after having been admitted in any status,” and (3) must “not [have] been convicted of any aggravated felony.” 8 U.S.C. § 1229b(a). The only one of these conditions in dispute here is the continuous residency requirement of INA § 240A(a)(2).
*369 C. Whether Application of 8 U.S.C. § 1229b(d)(l)(B) to Zuluaga’s Case Raises Retroactivity Concerns At All
In addition to instituting this new cancellation of removal scheme, however, IIR-IRA established a new stop-time rule in INA § 240A(d)(l) for calculating an alien’s period of continuous residence or physical presence. It is this rule that the government says operates to cut off Zuluaga’s continuous residence period and thereby destroys his eligibility for cancellation of removal.
The rule provides in relevant part that “any period of continuous residence or continuous physical presence in the United States shall be deemed to end ... when the alien has committed an offense referred to in section 1182(a)(2) of this title that renders the alien ... removable from the United States.” 8 U.S.C. § 1229b(d)(1)(B) (emphasis added). Thus, it is the date of the commission of the offense- — not the date of the subsequent conviction — that matters for purposes of computing an alien’s period of continuous residence. See Tablie v. Gonzales, 471 F.3d 60, 62 (2d Cir.2006) (“Under subsection 240A(d)(1), called the ‘stop-time rule,’ the alien’s continuous residency or physical presence ends, for purposes of cancellation of removal, on the date he commits a qualifying offense or on the date a notice to appear is filed.” (emphasis added)). If the stop-time rule applies to Zuluaga’s situation, he is ineligible for cancellation of removal. However, because § 1229b(d)(l)(B) did not exist at the time Zuluaga committed the offense, we must ascertain whether the stop-time rule is or is not impermissibly retroactive as applied to his case. See Landgraf v. USI Film Prods., 511 U.S. 244, 265, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994) (reciting the general principle that “the legal effect of conduct should ordinarily be assessed under the law that existed when the conduct took place” (quoting Kaiser Aluminum & Chem. Corp. v. Bonjorno, 494 U.S. 827, 855, 110 S.Ct. 1570, 108 L.Ed.2d 842 (1990) (Scalia, J., concurring)) (emphasis added)).[1]
D. Retroactivity Analysis under Landgraf
In Landgraf, the seminal case on retro-activity, the Supreme Court confirmed the continuing viability of the centuries-old presumption against retroactive legislation, emphasizing that “[ejlementary considerations of fairness dictate that individuals should have an opportunity to know what the law is and to conform their conduct accordingly; settled expectations should not be lightly disrupted.” Id. at 265, 114 S.Ct. 1483. At the same time, the Court acknowledged that Congress had the power, within constitutional limits, to enact laws with retroactive effect. It also observed that “[r]etroactivity provisions [in civil legislation] often serve entirely benign *370 and legitimate purposes, whether to respond to emergencies, to correct mistakes, to prevent circumvention of a new statute in the interval immediately -preceding its passage, or simply to give comprehensive effect to a new law Congress considers salutary.” Id. at 267-68, 114 S.Ct. 1483.
Based on the above principles, the Landgraf Court articulated a two-step test for determining when a statute could be applied retroactively. In the first step, the court must ascertain, using the ordinary tools of statutory construction, “whether Congress has expressly prescribed the statute’s proper reach.” Id. at 280, 114 S.Ct. 1483; see also Fernandez-Vargas v. Gonzales, 548 U.S. 30, 126 S.Ct. 2422, 2428, 165 L.Ed.2d 323 (2006). If the answer is yes, the inquiry is over, and “there is no need to resort to judicial default rules.” Landgraf, 511 U.S. at 280, 114 S.Ct. 1483. If, however, “the statute contains no such express command,” the court must move on to the second step and decide whether application of the statute would have a genuinely “retroactive effect.” Id. This is not always a simple task, because “[a] statute [is not impermissibly retroactive] merely because it is applied in a case arising from conduct antedating the statute’s enactment, or upsets expectations based in prior law.” Id. at 269, 114 S.Ct. 1483 (citation omitted). Rather, the court must assess “the nature and extent of the change in the law and the degree of connection between the operation of the new rule and a relevant past event,” and determine “whether the new provision attaches new legal consequences to events completed before its enactment.” Id. at 269-70, 114 S.Ct. 1483. If so, then the traditional presumption against retroactivity pertains and the new statute must be construed “as inapplicable to the event or act in question owing to the ‘absentee of] a clear indication from Congress that it intended such a result.’ ” Femandez-Vargas, 126 S.Ct. at 2428 (quoting St. Cyr, 533 U.S. at 316, 121 S.Ct. 2271) (alteration in original).
1. Landgraf Step One: Whether Congress Has Expressly Commanded That § 1229b(d)(l)(B) Be Applied to Pre-IIRIRA Conduct
Our analysis as to whether Congress expressly proscribed that the statute apply retroactively begins with an examination of the text. See Robinson v. Shell Oil Co., 519 U.S. 337, 340, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997). And on this score both parties agree that nothing in the language of 8 U.S.C. § 1229b(d)(1), or any other provision of the INA, explicitly directs that the criminal-offense stop-time rule be applied to pre-IIRIRA conduct. Significantly, Congress did include express statements in IIRIRA mandating the retroactive application of other provisions, such as the expanded definition of aggravated felony. See IIRIRA § 321(b), 110 Stat. at 3009-628 (“Notwithstanding any other provision of law (including any effective date), the term [“aggravated felony”] applies regardless of whether the conviction was entered before, on, or after [September 30, 1996].”); see also St. Cyr, 533 U.S. at 318-19, 121 S.Ct. 2271. The absence of such an express statement with respect to § 1229b(d)(l)(B) indicates “that Congress did not definitively decide the issue of [the provision]^ retroactive application to pre-enactment [conduct].” St. Cyr, 533 U.S. at 320, 121 S.Ct. 2271 (quotation marks omitted). We thus do not find that Congress has expressly prescribed the statute’s reach.
Despite the absence of a clear textual command in § 1229b(d)(l)(B), the government argues that Congress plainly intended for the criminal-offense stop-time rule to apply retroactively. The government finds this intent in the transitional rule of IIRIRA § 309(c)(5). The government fur *371 ther contends that this Court’s recent decision in Tablie, which interpreted IIRIRA § 309(c)(5), compels denial of Zuluaga’s petition.
IIRIRA § 309(c)(5) and Tablie, however, are not dispositive of this case. Unlike Tablie, this case is a permanent rule case: Because the proceedings against Zuluaga were not pending when IIRIRA was enacted or when it went into effect, the transitional rules do not apply. See Arenas-Yepes, 421 F.3d at 115; see also 143 Cong. Rec. S12658-01, at S12660 (1997) (“Section 203 modifies certain transitional rules established by IIRIRA with regard to suspension of deportation and cancellation of removal. The changes state that the ‘stop time’ rule established by that Act in section 240A of the INA shall apply generally to individuals in deportation proceedings before April 1, 1997, with certain exceptions.”) (emphasis added). Thus the permanent provisions of IIRIRA govern Zu-luaga’s petition, see Kuhali v. Reno, 266 F.3d 93, 99 (2d Cir.2001), and, as already discussed, nothing in those provisions clearly mandates the retroactive application of § 1229b(d)(l)(B) to pre-IIRIRA conduct.
The government next argues that even if the transitional rule does not technically govern this case, it would be “incongruous” to “hold that the stop-time rule does not apply to [Zuluaga], where this Court has held that it applied to Tablie.” Government’s Reply Brief at 13. To avoid this incongruity, the government asks us to treat Zuluaga’s case as if it were a transitional-rule case and, in support, cites two cases from other circuits, Garcia-Ramirez v. Gonzales, 423 F.3d 935 (9th Cir.2005) (per curiam), and Heaven v. Gonzales, 473 F.3d 167 (5th Cir.2006).
We decline, however, to follow the path taken by the Fifth and Ninth[2] Circuits. Assuming that it would be “incongruous” for the stop-time rule to apply retroactively in transitional cases but not permanent-rule cases, that fact does not give us license to artificially stretch the transitional rules to cover this case. As one court correctly observed, “[s]ection 309(c)(5) shows ... that when Congress wanted the [stop-time] provision to apply retroactively to a limited category of cases — deportation cases pending when IIRIRA took effect— it said so clearly.” Henry v. Ashcroft, 175 F.Supp.2d 688, 694 (S.D.N.Y.2001). Congress could have done the same for permanent-rule cases, but did not. We will not infer from this silence congressional intent for § 1229b(d)(l)(B) to apply retroactively in this case.
Amicus counsel, on the other hand, argues that Congress intended the opposite: that § 1229b(d)(l)(B) not be applied to pre-IIRIRA conduct in permanent-rule cases because “the plain language of the IIRIRA addressing the applicability of different bars to relief shows that Congress used express language when it chose to limit relief based on past events,” and because “a backward looking interpretation would produce absurd results.” Amicus *372 Brief of Nancy Morawitz at 13. To the extent that there is any ambiguity, amicus counsel asserts that the rule of lenity requires that the ambiguity be resolved in Zuluaga’s favor. We disagree.
The absence of express language going to the temporal scope of a new statutory provision may indicate that Congress failed to specifically consider the issue. It does not, however, evince a clear intent to bar the application of a new provision to any case that somehow implicates past conduct or prior events. While there is a judicial presumption against retroactive application, that presumption operates only after the court determines, in step two of the Landgraf analysis, that the provision would have an impermissible retroactive effect as applied to the case at hand. In other words, silence or ambiguity in the statutory text and history requires the court to move on to step two, not to declare a victory for the opponent of retroactivity at step one. See St. Cyr, 533 U.S. at 320, 121 S.Ct. 2271.
Amicus counsel’s absurdity argument is flawed for the same reason. The critical inquiry at step one of Landgraf is “whether Congress has expressly prescribed the statute’s proper reach.” Landgraf, 511 U.S. at 280, 114 S.Ct. 1483. Based on the relevant text, we conclude that it has not. Therefore, to determine whether § 1229b(d)(l)(B) may be applied to Zulua-ga’s 1995 offense, we must proceed to step two of the Landgraf inquiry.
2. Landgraf Step Two: Whether Application of § 1229b(d)(l)(B) to Zuluaga’s Pre-IIRIRA Conduct Would Produce an Impermissible Retroactive Effect
Before addressing the merits of step two, we pause to consider the extent of deference, if any, that is owed to the BIA’s decision in In re Perez, 22 I. & N. Dec. 689, in which the BIA held that the stop-time rule does not have an impermissible retroactive effect as applied to an alien whose criminal conduct occurred pri- or to IIRIRA’s passage. 22 I. & N. Dec. at 691. In general, when Congress has delegated authority to an agency to administer a statute, and “the statute is silent or ambiguous with respect to [a] specific issue,” we must accord substantial deference to a reasonable interpretation given by the agency and cannot “simply impose [our] own construction on the statute.” Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 843, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). “The BIA, through powers delegated by the Attorney General, enforces and interprets the INA and thus has the authority to fill statutory gaps with reasonable interpretations.” Blake, 498 F.3d at 100 (citing 8 U.S.C. § 1103(a)).
As we have determined, IIRIRA is silent with respect to the specific issue in this case— § 1229b(d)(1)(B) retroactivity. Though statutory silence would ordinarily trigger Chevron deference, this principle does not hold when the issue is retroactivity, for a statute that is silent “with respect to retroactive application is construed under [the Supreme Court’s] precedent to be unambiguously prospective” in effect. St. Cyr, 533 U.S. at 320 n. 45, 121 S.Ct. 2271. Accordingly, “there is, for Chevron purposes, no ambiguity in such a statute for an agency to resolve.” Id.; see also Henderson v. INS, 157 F.3d 106, 130 (2d Cir.1998) (“[U]nder ordinary rules of statutory construction, a statute that is silent with respect to retroactivity is not ‘ambiguous.’ ”). What remains to be determined is whether the provision would have an improper retroactive effect in the particular case; that inquiry, however, does not concern the sort of statutory gap that Congress has designated the BIA to fill, nor a *373 matter in which the BIA has particular expertise. Cf. Gill v. INS, 420 F.3d 82, 89 (2d Cir.2005) (“Because the BIA has expertise applying and construing immigration law, we afford Chevron deference to its construction of undefined statutory terms.... ”). We therefore decline to defer to the BIA’s opinion in In re Perez and proceed to make our own determination under Landgraf s second step.
In Landgraf the Supreme Court explained that a statute is impermissibly retroactive if it “takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past.” 511 U.S. at 269, 114 S.Ct. 1483 (quotation marks omitted). Each of the identified effects is “a sufficient, rather than a necessary, condition for invoking the presumption against retroactivity.” Hughes Aircraft Co. v. United States ex rel. Schumer, 520 U.S. 939, 947, 117 S.Ct. 1871, 138 L.Ed.2d 135 (1997) (emphasis in original). In applying this framework we must exercise our “commonsense, functional judgment about whether the new provision attaches new legal consequences to events completed before its enactment.” St. Cyr, 533 U.S. at 321, 121 S.Ct. 2271 (quotation marks omitted). Our analysis is further “informed and guided by familiar considerations of fair notice, reasonable reliance, and settled expectations.” Id. (quotation marks omitted).
Exercising our “commonsense, functional judgment” leads us to conclude that § 1229b(d)(l)(B) would not have an impermissible retroactive effect if applied to Zuluaga’s 1995 offense. As the Supreme Court has observed, whether “a particular application is retroactive will depend] upon what one considers to be the determinative event by which retroactivity or prospectivity is to be calculated.” Republic Nat’l Bank of Miami v. United States, 506 U.S. 80, 100, 113 S.Ct. 554, 121 L.Ed.2d 474 (1992) (Thomas, J., concurring) (emphasis and alteration in original) (internal quotation marks and citation omitted). As discussed above, the determinative event here happened when Zulua-ga committed the drug offense and not when he was convicted. See Landgraf, 511 U.S. at 265, 114 S.Ct. 1483 (“[T]he legal effect of conduct should ordinarily be assessed under the law that existed when the conduct took place.” (internal quotation omitted)). And while we note that it is sometimes proper to find that the determinative event is a date subsequent to the underlying criminal act when there is “relevant secondary conduct,” see St. Cyr v. INS, 229 F.3d 406, 418 (2d Cir.2000) (emphasis added), there was no such secondary conduct here. After petitioner committed the offense, he did no more than passively await the outcome of his prosecution. Cf. Id. (finding date of underlying criminal conduct to be an inappropriate trigger for retroactivity analysis when there was a later “decision to enter a guilty plea to [the] crime”(emphasis added)(internal quotation marks and citation omitted)).
Because the trigger for retroactivity analysis here is the date that Zuluaga committed the drug offense, he cannot show that the new law attaches a new disability on past acts.[3] Deportation is the *374 consequence he receives upon retroactive application of the stop-time rule just as it is the consequence he would have received immediately following his criminal conduct. The instant petitioner committed the offense before meeting the seven-year residency requirement for suspension of deportation, he became eligible for deportation. See Immigration and Nationality Act (“INA”) § 237(a)(2)(B)(1), 8 U.S.C. § 1227(a)(2)(B)(I) (“Any.alien who at any time after admission has been convicted of a violation of ... any law ... relating to a controlled substance ... other than a single offense involving [a small amount of marijuana for one’s own use] is deporta-ble.”). That is, if petitioner had been captured and successfully prosecuted — by plea, adverse jury verdict, or otherwise— and the INS had obtained a deportation order promptly after he committed the offense, he could have been deported without the possibility of relief because he would not, at that time, have accrued the seven years required by the repealed INA § 212(c). It was only the time required to bring an offender to justice that pushed the disposition of his case beyond the seven-year threshold. But this lapse of time, in the absence of circumstances requiring additional retroactivity scrutiny, such as subsequent conduct in reliance on the then-existing state of the law or the creation of a vested right after the criminal act; does not create a material difference for retroactivity purposes between an alien in Zuluaga’s situation and an alien who was successfully convicted and deported prior to accruing seven years of continuous residence.
Our view is supported by the facts of Landgraf itself. There, the Supreme Court considered the retroactivity of § 102 of the Civil Rights Act of 1991, which “significantly expanded] the monetary relief’ available to plaintiffs who proved intentional employment discrimination under Title VII of the Civil Rights Act of 1964. Landgraf, 511 U.S. at 253, 114 S.Ct. 1483. Prior to the 1991 Act, Title VII plaintiffs could only recover backpay; afterwards, as a result of § 102, plaintiffs who won a backpay award could recover compensatory and punitive damages as well. See id. at 253-54, 114 S.Ct. 1483. The Court acknowledged that “concerns of unfair surprise and upsetting expectations [were] attenuated in the case of intentional employment discrimination, which ha[d] been unlawful for more than a generation” prior to the 1991 Act. Id. at 283 n. 35, 114 S.Ct. 1483. The Court nonetheless concluded that “the new compensatory damages provision would operate ‘retrospectively’ if it were applied to conduct occurring before [the enactment of the 1991 Act],” because it would place a new legal burden on past conduct:
Unlike certain other forms of relief, compensatory damages are quintessentially backward looking.... In this case, the event to which the new damages provision relates is the discriminatory conduct of respondents’ agent John Williams; if applied here, that provision would attach an important new legal burden to that conduct. The new damages remedy in § 102, we conclude, is the kind of provision that does not apply to events antedating its enactment in the absence of clear congressional intent.
Landgraf, 511 U.S. at 282-83, 114 S.Ct. 1483.
The relationship between the consequences of a new law and the conduct predating the new law is an important one for retroactivity analysis. See Landgraf, 511 U.S. at 270, 114 S.Ct. 1483 (“The conclusion that a particular rule operates ‘retro *375 actively’ comes at the end of a process of judgment concerning the nature and extent of the change in the law and the degree of connection between the operation of the new rule and a relevant past event”). And what was present in Landgraf.] but is absent here, is changed consequences. See id. at 283, 114 S.Ct. 1483. The statute in Landgraf was impermissi-bly retroactive because it would allow the recovery of compensatory damages that were not recoverable under the law that existed when the conduct at issue occurred. In contrast, IIRIRA, as applied to petitioner here, did not change the consequence of petitioner’s criminal act. Zulua-ga’s commission of the crime charged immediately placed him in a category of aliens eligible for deportation upon conviction.
Our decision remains sound when reasonable reliance is taken into consideration.[4] In many cases regarding impermissible retroactivity in the immigration context, the issue of reliance plays a central role in the court’s analysis. In St. Cyr, the Supreme Court emphasized that St. Cyr, and many others in his situation, had pled guilty and waived their right to a trial in reliance on the continued availability of § 212(c) relief. See St. Cyr, 533 U.S. at 323, 121 S.Ct. 2271 (“Relying upon settled practice, the advice of counsel, and perhaps even assurances in open court that the entry of the plea would not foreclose § 212(c) relief, a great number of defendants in [petitioners’] position agreed to plead guilty.”). Following St. Cyr, this Court has likewise focused on the concept of detrimental reliance in analyzing the effect of IIRIRA’s repeal of § 212(c) on aliens previously convicted of aggravated felonies. See Rankine v. Reno, 319 F.3d 93, 100 (2d Cir.2003) (holding that the repeal of § 212(c) was not impermissibly retroactive as applied to aliens who were convicted following jury trial prior to the repeal, because they could not show that they “chose to go to trial in reliance on the *376 availability of § 212(c) relief’). But see Restrepo v. McElroy, 369 F.3d 627, 634 (2d Cir.2004) (clarifying that the repeal could have an improper retroactive effect as to an alien who, after losing at trial, “de-cid[ed] to forgo the immediate filing of a 212(c) application based on the considered and reasonable expectation that he would be permitted to file a stronger application for 212(c) relief at a later time”); see also Wilson v. Gonzales, 471 F.3d 111, 122 (2d Cir.2006) (requiring that aliens who claim to have “delayed filing an affirmative § 212(c) application to build a stronger case warranting the granting of that relief’ to make an individualized showing of reliance).
When, as in the above cases, the relevant conduct is a legal decision[5] — e.g., the decision to plead guilty or go to trial — it makes sense to focus on whether the alien detrimentally relied upon the then-existing law in making the decision. On the other hand, it makes no sense at all to ask whether an alien, in committing a drug trafficking offense, acted with “an intention to preserve [his or her] eligibility for relief under § 212(c),” Rankine, 319 F.3d at 100, or in an effort to “conform[ ] his or her conduct according to the availability of relief,” St. Cyr, 229 F.3d at 420. Cf. St. Cyr, 229 F.3d at 418 (noting the absurdity of the notion that aliens committed drug crimes in reliance on the continued availability of discretionary relief). We therefore conclude that Zuluaga cannot show a protectable reliance interest here.
Moreover, even if Zuluaga were to have somehow improbably relied on the absence of the stop-time rule when he committed the offense, as explained above, the retroactive application of the stop-time rule did not alter the legal consequence of his actions. And there was no subsequent reliance because Zuluaga did not later enter into a transaction or engage in conduct in reliance on the availability of discretionary relief. See Rankine v. Reno, 319 F.3d 93, 100 (2d Cir.2003) (“[P]etitioners neither did anything nor surrendered any rights that would give rise to a comparable reliance interest.”). Petitioner did nothing except wait while the criminal justice process ran its course.
Additionally, taking into account “familiar considerations of fair notice ... and settled expectations,” INS v. St. Cyr, 533 U.S. 289, 321, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001)(internal quotation marks and citation omitted), we fail to see how either of these guiding principles was contravened in the instant case. Fair notice was not violated because the law was certain at the time Zuluaga acted. He would have been deportable without possibility of discretionary relief had he been convicted before he accrued seven years. See 8 U.S.C. § 1227(a)(2)(B)®. And settled expectations were not disrupted because, assuming that Zuluaga expected anything with respect to deportation when he com *377 mitted the offense, his expectation could not have been anything other than that he was subject to deportation without the opportunity for discretionary relief.
In sum, we conclude that applying § 1229b(d)(l)(B) to Zuluaga’s pre-IIRIRA offense would not produce an impermissible retroactive effect.
CONCLUSION
For the foregoing reasons, the petition for review is Denied.

. The government argues that our holding in Domond v. INS, 244 F.3d 81 (2d Cir.2001) requires a different result on this score. The government is incorrect. In Domond, we held that the aggravated felony bar of the Antiterrorism and Effective Death Penalty Act ("AEDPA”), Pub.L. No. 104-132, § 440(d), 110 Stat. 1214, 1227 (1996), was not retroactive as applied to an alien whose criminal conduct pre-dated AEDPA, but whose conviction came after AEDPA’s enactment. 244 F.3d at 86. This was so because "[w]hile the underlying criminal conduct is crucial to the conviction, it is not the conduct that bars relief under the statutory scheme.” Id. By contrast, under § 1229b(d)(l)(B), it is the underlying criminal act — not the conviction— that triggers disqualification from relief. In this case, the underlying criminal conduct took place on April 9, 1995. Because the triggering conduct here took place prior to the effective date of the act, Domond is inap-posite.

. We note that the Ninth Circuit has declined to follow Garcia-Ramirez’s approach in subsequent decisions. See Valencia-Alvarez v. Gonzales, 469 F.3d 1319, 1326-27, 1327 n. 10 (9th Cir.2006) (finding the language of IIRI-RA insufficiently clear to infer an intent on the part of Congress to make § 1229b(d)(l)(B) retroactively applicable in permanent-rule cases); Sinotes-Cruz v. Gonzales, 468 F.3d 1190, 1199-201 (9th Cir.2006) (concluding that the question of § 1229b(d)(l)(B)’s temporal reach could not be resolved at step one of Landgraf because the language of the permanent provision “is ambiguous with respect to its retroactivity,” and the "transitional rule does not clearly indicate that it is to be applied retroactively to part B of § 1229b(d)(l) in all circumstances”).

. Zuluaga does not appear to argue that his case falls within Justice Story’s category of retroactivity pertaining to the cancellation of "vested rights.” In any event, such an argument would be without merit because the Supreme Court has cautioned that “cancellation of removal ... [and other] putative claims to relief are not 'vested rights,’ a term that describes something more substantial than inchoate expectations and unrealized opportunities.” Fernandez-Vargas v. Gonzales, *374 548 U.S. 30, 126 S.Ct. 2422, 2432 n. 10, 165 L.Ed.2d 323- (2006).

. The concurrence argues, in essence, that reliance is the only factor relevant to retroac-tivity analysis in immigration cases in this Circuit. That is, the concurrence argues that "in our Circuit, petitioners ... must show that they detrimentally relied on the prior law.” But we have never stated that petitioners must show reliance in every case. While it is clear that reliance has played an important role in our retroactivity cases in the immigration context, the fact that one factor may be determinative in certain cases does not mean that it is the only determinative factor in every case. Indeed, in Domond v. INS, 244 F.3d 81 (2d Cir.2001), we undertook the same analysis as the majority opinion now takes. After stating that the question before the court was “whether the lack of discretionary relief applies to aliens whose criminal conduct pre-dates enactment of AEDPA,” and after finding that the statute was ambiguous, we proceeded under Landgraf s second step to ascertain whether the statute "imposes ‘new legal consequences to events completed before its enactment.’ ” Id. at 85 (internal citation omitted). We also said we would “rely on 'familiar considerations of fair notice, reasonable reliance, and settled expectations' for guidance in determining retroactive effect.” Id. (internal citation omitted).
Under Landgraf s second step, in Domond we then held "that Section 440(d) imposes no new legal consequences on aliens like Domond whose conduct pre-dates AEDPA, but whose convictions came after AEDPA's enactment.” Id. (emphasis added). The panel in Domond reached this conclusion, as the majority opinion does, because "[d]eportation was always the consequence” of the petitioner’s criminal conduct. Finally after engaging in the foregoing reasoning we added: “[n]or does Do-mond’s loss of the Section 212(c) hearings in these circumstances raise the same reliance and expectation concerns raised in St. Cyr.” Id. (emphasis added). As the conjunction "nor” indicates, reliance was not even the first, much less the only factor the Court analyzed under Landgraf s second step. We therefore disagree with our colleague that reliance is the sole factor considered in our jurisprudence in immigration cases raising retroactivity concerns.

. See St. Cyr v. INS, 229 F.3d 406, 418 (2d Cir.2000) (" '[I]t is the conviction, not the underlying criminal act, that triggers the disqualification from § 212(c) relief.’ Thus, in considering whether the changes to the availability of discretionary relief would alter the legal effect of conduct that predates the AED-PA and IIRIRA's enactment, our analysis focuses on the decision to enter a guilty plea to a crime — not on the criminal conduct — that qualifies the alien for removal under the immigration laws.” (citation omitted)); see also id. at 419 ("[A] legal resident who is charged with a crime that renders him removable from the United States carefully considers the immigration consequences of his or her conviction and, specifically, the availability of discretionary relief from removal. It is not unreasonable to attribute knowledge of the availability of relief to a legal resident because it is a common requirement that defense counsel and the court advise a criminal defendant of the immigration consequences of a guilty plea.”).