SLOVITER, Circuit Judge,
concurring.
I join all of Judge Jordan’s opinion with the exception of Part H.A.2., which addresses the retroactivity of the stop-time rule. The majority abjures conducting a *118 Landgraf analysis because it concludes that the application of the stop-time rule to Jurado-Delgado’s case is not impermissi-bly retroactive, indeed not retroactive at all. See Landgraf v. USI Film Products, 511 U.S. 244, 114 S.Ct. 1488, 128 L.Ed.2d 229 (1994). I disagree with the majority’s analysis, but not with the final result.
The majority finds that this case does not “implicate[ ] a federal statute enacted after the events in suit,” id. at 280, 114 S.Ct. 1483, (a prerequisite for application of a Landgraf analysis) because “Jurado-Delgado is being removed for an act that he committed in 2004, long after § 1229b took effect.” Maj. Op. at 114. The majority is correct that Jurado-Delgado’s post-IIRIRA crimes render him removable (as do his earlier crimes), but it is only his pre-IIRIRA offenses that render him ineligible for cancellation of removal under the stop-time rule. If the stop-time rule did not apply retroactively to crimes predating IIRIRA, Jurado-Delgado would be statutorily eligible for cancellation of removal because his 1991 offenses would not have terminated his period of continuous presence.
The BIA based its rejection of Jurado-Delgado’s request for cancellation of removal by applying the stop-time rule to the 1991 crimes. In re Jurado-Delgado, 24 I. & N. Dec. 29, 35 (B.I.A.2006). Jura-do-Delgado argues that the BIA erred in applying the stop-time retroactively, and that a correct application of Landgraf precludes such retroactivity. The government disagrees, and asks us to deny the Petition for Review.
The majority attempts to explain its failure to apply a Landgraf analysis where it states that the Landgraf analysis applies only when a case implicates a federal statute enacted after the events in suit. See Maj. Op. at 115. The stop-time rule fits that scenario in this case. It is contained in 8 U.S.C. § 1229b(d)(l) which was enacted in 1996 and became effective in 1997. The stop-time rule would interrupt Jura-do-Delgado’s accrual of seven years continuous presence when he committed the 1991 offenses if it applies retroactively to events before its enactment. Therefore, I believe we must deal with Landgraf, the decision of the Supreme Court that instructs us when statutes are to be applied retroactively.[1]
In Landgraf, the Supreme Court established a two-part analysis for determining if a statute has an impermissibly retroactive effect: First, we must determine if Congress has given a clear indication that the statute is to be applied retroactively. 511 U.S. at 280, 114 S.Ct. 1483. “If Congress has done so, of course, there is no need to resort to judicial default rules.” Id. At the second step, we must consider whether retroactive application of the statute “would impair rights a party possessed when he acted, increase a party’s liability for past conduct, or impose new duties with respect to transactions already completed.” Id.
Under step one of Landgraf, nothing in the stop-time rule clearly indicates that Congress unambiguously expressed that the rule be applied retroactively. Nothing in the statute indicates the appropriate temporal scope of the stop-time rule with *119 respect to an alien in Jurado-Delgado’s position. In contrast, the transitional rule expressly makes the stop-time rule applicable to pending cases involving suspension of deportation. IIRIRA § 309(c)(5), Pub. L. No. 104-208, 110 Stat. 3009-627 (1996).[2] However, that rule offers no guidance here because Jurado-Delgado would not have been eligible for suspension of deportation.[3] The transitional rule addressed only applications for suspension of deportation and was silent as to pending applications for § 212(c) waivers. Because Congress’ intent to make the stop-time rule retroactive is ambiguous with respect to an alien in Jurado-Delgado’s situation, we need to proceed to step two of Landgraf. See INS v. St. Cyr, 533 U.S. 289, 320, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001).
Jurado-Delgado’s claim fails under step two of Landgraf because he cannot show that the retroactive application of the stop-time rule to his 1991 crimes “would impair rights [he] possessed when he acted, increase [his] liability for past conduct, or impose new duties with respect to transactions already completed.” Landgraf 511 U.S. at 280, 114 S.Ct. 1483.
“[W]hether a particular application is retroactive will depenfd] upon what one considers to be the determinative event by which retroactivity or prospectivity is to be calculated.” Republic Nat’l Bank of Miami v. United States, 506 U.S. 80, 100, 113 S.Ct. 554, 121 L.Ed.2d 474 (1992) (Thomas, J., concurring) (internal quotation marks, citation, and emphasis omitted). Here, the relevant conduct was the commission of the crimes, as opposed to the subsequent guilty pleas. See Martinez v. INS, 523 F.3d 365, 373-76 (2d Cir.2008) (holding that the commission of the crime is the determinative event for a Landgraf analysis of the stop-time rule).
As the majority notes, Jurado-Delgado committed the offenses underlying the 1991/92 convictions on March 27,1991, and December 19, 1991. Jurado-Delgado arrived as a lawful permanent resident on September 15, 1985. Because he had not established seven years of continuous presence at the time of his commission of the offenses leading to the 1991/92 convictions, his right to § 212(c) relief had not vested. Accordingly, the Landgraf analysis does not protect Jurado-Delgado from retroactive application of the stop-time rule because the 1996 enactment of the stop-time rule did not impair any rights that he possessed at the time of his offenses.

. Other courts that have addressed this question in depth have applied a Landgraf analysis. See, e.g., Martinez v. INS, 523 F.3d 365, 369-77 (2d Cir.2008); Peralta v. Gonzales, 441 F.3d 23, 30-31 (1st Cir.2006); Sinotes-Cruz v. Gonzales, 468 F.3d 1190, 1198-1203 (9th Cir.2006); Pinho v. INS, 249 F.3d 183, 187-190 (3d Cir.2001); Appiah v. INS, 202 F.3d 704, 708-09 (4th Cir.2000); Henry v. Ashcroft, 175 F.Supp.2d 688, 692-96 (S.D.N.Y.2001).

. This court has held that the application of the stop-time rule to transitional suspension of deportation cases is not impermissibly retroactive because Congress clearly intended that it be applied retroactively and doing so does not impair any vested rights. See Pinho v. INS, 249 F.3d 183, 188-89 (3d Cir.2001). Many of our sister circuits have come to the same conclusion. See e.g., Tablie v. Gonzales, 471 F.3d 60, 63-64 (2d Cir.2006); Peralta v. Gonzales, 441 F.3d 23, 30-31 (1st Cir.2006).

. Jurado-Delgado does not argue that he would have been eligible for suspension of deportation; he argues that, under pre-IIRI-RA law, he would have been eligible for § 212(c) relief (Appellant's Br. 38-39, Reply Br. 11).