09-0649-ag
Vartelas v. Holder

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

- - - - - -

August Term, 2009

(Argued: January 12, 2010            Decided: September 9, 2010)

Docket No. 09-0649-ag

_____

PANAGIS VARTELAS,

Petitioner,

- v. -

ERIC H. HOLDER, Jr., U.S. ATTORNEY GENERAL,

Respondent.

_____

Before: KEARSE, CABRANES, and LIVINGSTON, Circuit Judges.

Petition for review of a decision of the Board of Immigration Appeals, refusing to reopen removal proceeding on petitioner's motion asserting that his counsel provided ineffective assistance by failing to assert (a) that the crime of which petitioner had been convicted was a petty, nonremovable, offense within the scope of 8 U.S.C. § 1182(a)(2)(A)(ii)(II), and (b) that 8 U.S.C. § 1101(a)(13), as amended by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, could not be applied retroactively.

Petition denied.

ANDREW K. CHOW, New York, New York (Neil A. Weinrib & Associates, New York, New York, on the brief), for Petitioner.

KEITH I. McMANUS, Senior Litigation Counsel, Washington, D.C. (Tony West, Assistant Attorney General, Terri J. Scadron, Assistant Director, Anthony W. Norwood, Senior Litigation Counsel, Office of Immigration Litigation, U.S. Department of Justice, Civil Division, Washington, D.C., on the brief), for Respondent.

KEARSE, Circuit Judge:

Petitioner Panagis Vartelas, an alien who is a lawful permanent resident of the United States and who traveled abroad after being convicted of a crime involving moral turpitude, seeks review of a decision of the Board of Immigration Appeals ("BIA" or the "Board") denying his motion to reopen a removal proceeding brought against him pursuant to § 212(a)(2)(A)(i)(I) of the Immigration and Nationality Act ("INA" or the "Act"), 8 U.S.C. § 1182(a)(2)(A)(i)(I), as a returning alien seeking "admission" to the United States within the meaning of INA § 101(a)(13), 8 U.S.C. § 1101(a)(13), as amended by § 301(a)(13) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub L. No. 104-208, Div. C., 110 Stat. 3009-546 (1996). Vartelas moved to reopen on the ground that his attorneys had rendered ineffective assistance by failing to move before the Immigration Judge ("IJ") for termination of the removal proceeding on the grounds (a) that the offense of which he was convicted was within the scope of 8 U.S.C. § 1182(a)(2)(A)(ii)(II) and thus was not a removable offense, and (b) that the IIRIRA amendment should not be applied retroactively to treat him as seeking "admission." In his petition for review, Vartelas

- 2 -

contends principally that the BIA applied an erroneous legal standard to his ineffective assistance claim and erred in concluding that he was not prejudiced by his attorneys' failure to move for termination of the removal proceeding on the above grounds. Finding no merit in his contentions, we deny the petition for review.

## I. BACKGROUND

Vartelas, a citizen of Greece, has been a lawful permanent resident ("LPR") of the United States since 1989. In 1994, he was convicted, upon his plea of guilty, of having conspired in 1992 to make or possess a counterfeit security in violation of 18 U.S.C. § 371, see id. § 513(a). That offense carried a maximum term of imprisonment of five years. The range of imprisonment recommended by the Sentencing Guidelines ("Guidelines") was 4-10 months; the prison term imposed on Vartelas was four months.

The INA provides generally that "[a]ny alien who at the time of entry" would be ineligible for admission into the United States under "the law existing at such time" by reason of, inter alia, having committed a non-petty offense involving moral turpitude "is deportable." 8 U.S.C. 1227(a)(1)(A) (2006) ("Any alien who at the time of entry . . . was within one or more of the classes of aliens inadmissible by the law existing at such time is deportable."), transferred from id. § 1251(a)(1)(A) (1994) ("Any alien who at the time of entry . . . was within one or more of the

classes of aliens excludable by the law existing at such time is deportable."); see id. § 1182(a)(2)(A) (classes ineligible for admission include aliens who have been convicted of, or who admit having committed, non-political, non-petty crimes involving moral turpitude, or conspiracy to commit such crimes); see also 18 U.S.C. § 1(3) (1982 & Supp. IV 1987) (repealed 1987) (terming a misdemeanor for which an individual could not be imprisoned for more than six months or fined more than $5,000, or both, "a petty offense"). Crimes involving moral turpitude include counterfeiting offenses. See, e.g., United States ex rel. Volpe v. Smith, Director of Immigration, 289 U.S. 422, 423 (1933).

On January 29, 2003, Vartelas returned to the United States from a trip to Greece and claimed the right to return as an LPR. He was questioned by an immigration officer about his 1994 conviction, and in March 2003 he was served with a notice to appear for removal proceedings on the ground that he was inadmissible as an alien who sought entry into the United States after being convicted of, or having admitted committing, a crime of moral turpitude.

A. The Proceedings Before the IJ and the Appeal to the BIA

In 2003, 2004, and early 2005, Vartelas appeared before an IJ at a number of preliminary hearings at which various possible defenses to the charge of removability were discussed. At a hearing on June 15, 2005, however, Vartelas's then-attorney informed the IJ that Vartelas was conceding that he was removable

- 4 -

as charged, but that he would request relief from removal under former § 212(c) of the INA, 8 U.S.C. § 1182(c) (1994) (repealed 1997). Although that section, which granted the Attorney General discretion to waive certain grounds of deportability for a subset of LPRs, had been repealed by IIRIRA, it remained available to LPRs whose convictions were based on guilty pleas entered before IIRIRA's effective date of April 1, 1997, see INS v. St. Cyr, 533 U.S. 289 (2001) ("St. Cyr II"), aff'g 229 F.3d 406 (2d Cir. 2000) ("St. Cyr I"). After Vartelas's first attorney thereafter neglected his responsibilities, Vartelas changed attorneys and continued the strategy of conceding his removability and requesting a § 212(c) discretionary waiver of removal.

In an Oral Decision delivered on June 27, 2006, the IJ denied Vartelas's application for relief under § 212(c). She noted, inter alia, that Vartelas had made frequent trips to Greece and remained there for long periods of time; had not paid his United States income taxes; had not shown hardship to himself, his estranged wife, or his United States citizen children who resided in Chicago with their mother; and had not shown that he supported the children. The IJ concluded that the equities did not warrant discretionary relief, and she ordered Vartelas removed from the United States to Greece.

Vartelas appealed the IJ's decision to the BIA, arguing (1) that although he had committed a crime involving moral turpitude, he had been sentenced to a prison term of less than six months and that under 8 U.S.C. § 1182(a)(2)(A)(ii)(II) his crime

- 5 -

was thus not a removable offense; and (2) that, if removable, he should have been granted relief under § 212(c). In an opinion dated May 1, 2008, the Board affirmed the order of removal. It refused to consider Vartelas's contention that his conspiracy crime was not a removable offense, because Vartelas had conceded removability before the IJ. The Board rejected Vartelas's contention that he should have been granted § 212(c) relief, adopting and affirming the decision of the IJ. The Board noted that Vartelas had not taken advantage of the opportunity afforded him by the IJ to clarify the facts relevant to his tax problems, and it stated that the positive equities of Vartelas's family ties and long residence in the United States were offset by his frequent sojourns in Greece and his voluntarily maintaining his United States residence in New York, a great distance from his children.

B. The Motion To Reopen the Proceeding

In July 2008, represented by new counsel, Vartelas filed a timely motion before the BIA to reopen, citing In re Lozada, 19 I. & N. Dec. 637 (B.I.A. 1988) (setting standard for motions to reopen based on claims of ineffective assistance of counsel), and alleging that the series of attorneys who represented him in the proceedings before the IJ had failed to provide him with effective assistance. In addition to arguing that his first attorney had been ill-prepared and had missed certain hearings, Vartelas argued principally that he had been severely prejudiced by both

- 6 -

attorneys' failure to pursue his defenses to removability. Adverting to the defense the Board had refused to consider on his appeal, and citing a predecessor of § 1182(a)(2)(A)(ii)(II), Vartelas pointed out that "the sentence actually imposed did not exceed a term of imprisonment in excess of six months" and stated that he "was not relying on 212(c) relief when he entered his plea of guilty; he was relying on the fact that the sentence imposed made his crime a non-removable crime at the time of conviction." (Vartelas Motion To Reopen and Remand at 12-13.) In addition, Vartelas argued that IIRIRA had changed the meaning of "entry" in § 101(a)(13) with respect to LPRs and that his prior attorneys had provided ineffective assistance by not challenging removability on the ground that the IIRIRA change should not be applied to him retroactively.

In an opinion dated January 23, 2009 ("BIA 2009 Decision") (reported, without pagination, at 2009 WL 331200), the BIA denied Vartelas's motion to reopen. The Board evaluated Vartelas's ineffective-assistance claim under the standard that had recently been announced by the Attorney General in In re Compean, Bangaly & J-E-C-, 24 I. & N. Dec. 710 (A.G. Jan. 7, 2009) ("Compean I") (overruling Lozada in part), vacated by In re Compean, Bangaly & J-E-C-, 25 I. & N. Dec. 1 (A.G. June 3, 2009) ("Compean II"). Describing the then-controlling Compean I, the Board noted that

> [t]o prevail on a deficient performance of counsel claim, the respondent must establish that his lawyer's failings were egregious and that his case was prejudiced by counsel's performance. To establish prejudice, the respondent must show that but for the lawyer's failing[s], he likely would have

- 7 -

succeeded on the merits of his underlying claim to remain in the United States.

BIA 2009 Decision at 1. The Board concluded that Vartelas did not meet this standard. It found no deficiency in the performance of Vartelas's second attorney; and it found that even if there were derelictions on the part of his first attorney, Vartelas

> failed to show that [the attorney's] performance prejudiced his case. The Immigration Judge gave the respondent additional time to obtain new counsel. [Vartelas] has failed to establish that he is not inadmissible as charged. [Vartelas] is not eligible for the "petty offense" exception under section 212(a)(2)(A)(ii)(II) of the Act, 8 U.S.C. § 1182(a)(2)(A)(ii)(II), because the maximum penalty for the crime of which he was convicted is five years imprisonment . . . .

BIA 2009 Decision at 2. The Board also rejected the contention that the IIRIRA-amended version of INA § 101(a)(13) was impermissibly retroactive as applied to Vartelas, noting that Vartelas cited only Camins v. Gonzales, 500 F.3d 872 (9th Cir. 2007). It stated that his reliance on that case was "misplaced because the instant case arises in the jurisdiction of the United States Court of Appeals for the Second Circuit, not the Ninth Circuit," and "the Board historically follows a court's precedent in cases arising in th[e] circuit" in which the proceeding is conducted. BIA 2009 Decision at 2. The Board concluded that Vartelas's attorneys' failure to raise the retroactivity argument thus did not prejudice him.

- 8 -

## II. DISCUSSION

On this petition for review, Vartelas argues principally that the BIA, in considering his motion to reopen the removal proceeding, should have applied the Lozada standard to his ineffective-assistance-of-counsel claim and should have found that standard satisfied. He contends that the BIA, in concluding that he failed to satisfy the prejudice prong of his claim, erred in not concluding that his offense of conviction was a nonremovable offense under § 1182(a)(2)(A)(ii)(II), see Part II.B. below; and in applying the IIRIRA-amended § 101(a)(13), rather than applying the "Fleuti doctrine," see Rosenberg v. Fleuti, 374 U.S. 449 (1963) ("Fleuti"), to conclude that in returning to the United States he was not seeking "entry," see Part II.C. below.

In reviewing the BIA's denial of a motion to reopen, we apply an abuse-of-discretion standard. See, e.g., Debeatham v. Holder, 602 F.3d 481, 484 (2d Cir. 2010); Wang v. BIA, 437 F.3d 270, 273 (2d Cir. 2006). For the reasons that follow, we see no abuse of discretion here.

A. The Prejudice Prong of a Claim of Ineffective Assistance in Removal Proceedings

In 1988, the BIA in Lozada established a framework within which it would consider a motion to reopen a removal proceeding based on a claim of ineffective assistance of counsel. See generally 19 I. & N. Dec. at 637. With regard to the substance of such a claim, the Board stated as follows:

- 9 -

> Any right a respondent in deportation proceedings may have to counsel is grounded in the fifth amendment guarantee of due process. . . . Ineffective assistance of counsel in a deportation proceeding is a denial of due process only if the proceeding was so fundamentally unfair that the alien was prevented from reasonably presenting his case. . . . <u>One must show, moreover, that he was prejudiced by his representative's performance</u>.

<u>Id</u>. at 638 (emphasis added).

In applying <u>Lozada</u> principles in the context of an alien's claim that his attorney failed to make certain arguments, the BIA has articulated a variety of standards as to what the alien must show to establish that counsel's performance caused him prejudice. For example, in <u>In Re Fernandez</u>, No. A41 590 875, 2006 WL 3088698 (B.I.A. Sept. 21, 2006) (unpaginated), the Board stated that "prejudice" "means that <u>it is likely that an alien would have prevailed</u> at the hearing or on appeal had the negligent representation not occurred." (Emphasis added.) In <u>In Re Munroe</u>, No. A34 111 687, 2007 WL 275812 (B.I.A. Jan. 18, 2007) (unpaginated), the Board described a standard considerably less stringent than likely-to-have-prevailed, stating that "evidence of prejudice" is

> evidence reflecting a <u>reasonable **possibility**</u> that the outcome of his removal hearing would have been different had counsel not declined to apply for relief on his behalf or conceded the charge of removability.

(Emphasis added.) And in applying <u>Lozada</u> in <u>In Re Chambers</u>, No. A18 133 311, 2007 WL 2588591 (B.I.A. Aug. 8, 2007) (unpaginated), the Board referred to yet another standard, stating that "[p]rejudice is shown where counsel's actions [are] so inadequate

that there is a reasonable **probability** that, but for counsel's ineffectiveness, the outcome of the proceedings would have been different," while also stating that Chambers had failed to show prejudice because he "failed to demonstrate what actions his former attorney should have taken that **would** have warranted a different result." (Emphases added.)

In Compean I, the then-Attorney General vacated Lozada in part, renouncing its assumption of a constitutional foundation for the right to counsel in removal proceedings, and established a clear and stringent standard for BIA analysis of motions to reopen based on claims of ineffective assistance of counsel. The Compean I Attorney General opined that "the Constitution does not confer a constitutional right to effective assistance of counsel in removal proceedings." 24 I. & N. Dec. at 714; but see, e.g., Debeatham v. Holder, 602 F.3d at 485 (such claims are grounded in the right to due process). The Attorney General noted, however, that the alien has a statutory privilege to retain counsel, see Compean I, 24 I. & N. Dec. at 726, and concluded that the Board has discretion to reopen proceedings "[i]n extraordinary cases, where a lawyer's deficient performance likely changed the outcome of an alien's removal proceedings," id. at 714 (emphasis added). He stated, "I conclude that to establish prejudice arising from a lawyer's deficient performance sufficient to permit reopening, an alien must show that but for the deficient performance, it is more likely than not that the alien would have been entitled to the ultimate relief he was seeking." Id. at 733-34 (emphasis added);

see also id. at 734 (finding "the 'more likely than not' standard . . . more appropriate than [the] 'reasonable probability' standard" and "more demanding").

In Compean II, a new Attorney General "vacate[d] Compean [I] in its entirety," 25 I. & N. Dec. at 3, and called for rulemaking to evaluate the Lozada framework and to determine what modifications should be proposed, see id. at 2. With Compean I vacated, the Lozada standard was expressly restored. See, e.g., id. at 3 ("To ensure that there is an established framework in place pending the issuance of a final rule, the Board and Immigration Judges should apply the pre-Compean standards to all pending and future motions to reopen based upon ineffective assistance of counsel, regardless of when such motions were filed.").

Compean I was announced after Vartelas filed his motion to reopen but before the Board ruled on the motion; Compean II vacated Compean I, but not until after the Board had ruled on his motion. Thus, the Compean I standard was the prevailing standard at the time of the Board's decision. Vartelas contends that the Board's application of the "stringent requirement" set in Compean I, rather than the standard set by Lozada, denied him due process. (Vartelas brief on appeal at 12.)

We conclude, however, that in this case we need not determine which of the standards of prejudice applies to an ineffective-assistance-of-counsel claim in removal proceedings. Whatever the provenance of the right, an ineffective-assistance

claim cannot be established without some showing of prejudice; and for the reasons stated in the sections that follow, Vartelas has failed to show prejudice under any standard.

B.    The Petty Offense Exception

Vartelas contends that his crime involving moral turpitude was a nonremovable offense under § 1182(a)(2)(A)(ii)(II) because he was sentenced to a prison term of less than six months.  We reject this contention because it disregards one of the criteria stated in that section.

Section 212(a)(2) of the INA, 8 U.S.C. § 1182(a)(2), defines classes of aliens who are excludable on "[c]riminal and related grounds."  In 1992 and 1994, when Vartelas committed and pleaded guilty to, respectively, the crime of conspiracy to make or possess a counterfeit security, subsection (a)(2)(A) provided, in pertinent part, as follows:

**(i) In general**

Except as provided in clause (ii), any alien convicted of, or who admits having committed, or who admits committing acts which constitute the essential elements of--

(I) a crime involving moral turpitude (other than a purely political offense) or an attempt or conspiracy to commit such a crime,

. . . .

is excludable.

**(ii) Exception**

Clause (i)(I) shall not apply to an alien who committed only one crime if--

- 13 -

. . . .

> (II) <u>the maximum penalty possible for the crime of which the alien was convicted</u> (or which the alien admits having committed or of which the acts that the alien admits having committed constituted the essential elements) <u>did not exceed imprisonment for one year **and**</u>, if the alien was convicted of such crime, the alien was not sentenced to a term of imprisonment in excess of 6 months (regardless of the extent to which the sentence was ultimately executed).

8 U.S.C. § 1182(a)(2)(A) (1988 & Supp. III 1992) (emphases added); <u>see</u> 8 U.S.C. § 1182(a)(2)(A) (2006) (substituting "inadmissible" for "excludable"). By its terms, therefore, § 1182(a)(2)(A)(ii)(II) is not applicable unless, <u>inter alia</u>, both the prison term actually imposed was not more than six months and "the maximum" prison term "<u>possible</u> for the crime" (emphasis added) was not more than one year.

The section of the Criminal Code under which Vartelas was convicted authorizes, <u>inter alia</u>, "imprison[ment of] not more than five years," 18 U.S.C. § 371. Thus, following his plea of guilty, Vartelas could have been sentenced to five years' imprisonment. His reliance on the fact that the range of imprisonment recommended by the Guidelines for his offense was 4-10 months (<u>see</u> Vartelas brief on appeal at 19) is misplaced. The plain meaning of "<u>maximum</u> penalty <u>possible</u>" (emphases added) is the highest penalty that the applicable statute allows. The "maximum . . . possible" does not refer to a Guidelines-recommended range of imprisonment that is less than what a court could lawfully impose. <u>Accord</u> <u>Mejia-Rodriquez v. Holder</u>, 558 F.3d 46, 48 (1st Cir. 2009) ("'maximum penalty possible' is determined in reference to the

- 14 -

relevant statutory range of imprisonment and not the federal Sentencing Guidelines range"); <u>Mendez-Mendez v. Mukasey</u>, 525 F.3d 828, 833 (9th Cir. 2008) ("The plain language of the statute indicates that the phrase, 'the maximum penalty possible,' refers to the statutory maximum, not the maximum sentence under the sentencing guidelines.").

As the crime of which Vartelas was convicted carried a statutory maximum prison term of five years, that crime was not one for which he could not lawfully be imprisoned for more than one year, and it thus did not qualify as a petty offense within the scope of § 1182(a)(2)(A)(ii)(II). Accordingly Vartelas was not prejudiced by his attorneys' failure to argue that he was nonremovable under that section.

C. <u>The Retroactivity Argument</u>

As indicated in Part I above, § 1227(a)(1)(A) provides that an alien who is inadmissible under the laws in effect at the time of his entry into the United States is deportable. Prior to the enactment of IIRIRA, the INA defined "entry" to

> <u>mean[] any coming of an alien into the United States</u>, from a foreign port or place or from an outlying possession, whether voluntarily or otherwise, <u>except that an alien having a lawful permanent residence in the United States shall not be regarded as making an entry into the United States for the purposes of the immigration laws if</u> the alien proves to the satisfaction of the Attorney General that <u>his departure to a foreign port or place</u> or to an outlying possession <u>was not intended</u> or reasonably to be expected by him or his presence in a foreign port or place or in an outlying possession was not voluntary.

- 15 -

8 U.S.C. § 1101(a)(13) (1994) (emphases added).

In 1963, the Supreme Court in _Fleuti_ interpreted this provision as it applied to an LPR who had been served with a notice of deportation under INA § 212(a) after returning to the United States following a visit of "about a couple hours" to Mexico, 374 U.S. at 450 (internal quotation marks omitted). The Court noted that "Congress unquestionably has the power to exclude all classes of undesirable aliens from this country," _id_. at 461, but concluded that Congress had not meant its definition of "entry" to encompass a resident alien's return from a brief, innocent, casual foreign excursion that was not intended to disrupt his resident alien status, _see id_. at 462. The Court concluded that such a trip "therefore may not subject [the LPR] to the consequences of an 'entry' into the country on his return." _Id_.

Effective April 1, 1997, the INA was amended by IIRIRA to, _inter alia_, delete the above definition of "entry" from the statute; and § 101(a)(13) was divided into subsections, the most pertinent of which provide as follows:

> (A) The terms "admission" and "admitted" mean, with respect to an alien, the lawful entry of the alien into the United States after inspection and authorization by an immigration officer.

>                 . . . .

> (C) An alien lawfully admitted for permanent residence in the United States shall not be regarded as seeking an admission into the United States for purposes of the immigration laws unless the alien--

>                 . . . .

> (v) <u>has committed an offense identified in</u>
> <u>section 1182(a)(2)</u> of this title . . . .

8 U.S.C. §§ 1101(a)(13)(A) and (C)(v) (2006) (emphases added). The word "entry" is not defined; and the new § 101(a)(13) omits reference to any effect that an LPR may have "intended" his foreign sojourn to have.

The statute itself is silent as to the intended effect of these amendments on the <u>Fleuti</u> doctrine, and this Court has not previously addressed this question. The BIA, however, has interpreted IIRIRA's amendment of § 101(a)(13) as superseding the <u>Fleuti</u> doctrine. In <u>In re Collado-Munoz</u>, 21 I. & N. Dec. 1061 (B.I.A. 1998), noting that "the central basis for the Supreme Court's reasoning in" <u>Fleuti</u> was the then-existing § 101(a)(13)'s definition of "entry" and its reference to "intended" consequences, and that "the amended section 101(a)(13)(C) of the Act no longer defines the term 'entry' and no longer contains the term 'intended,'" 21 I. & N. Dec. at 1065, the BIA concluded that "the <u>Fleuti</u> doctrine, with its origins in the no longer existent definition of 'entry' in the Act, does not survive the enactment of the IIRIRA as a judicial doctrine," <u>id</u>. The BIA reasoned that under the plain language of the new § 101(a)(13)(C)(v), which contains "a congressional directive not contained in the previous version of that section and not before the Supreme Court when it decided <u>Fleuti</u>," 21 I. & N. Dec. at 1066,

> <u>a lawful permanent resident who has committed an</u>
> <u>offense identified in section 212(a)(2)</u>, who has not
> since such time been granted relief under [certain
> other provisions], <u>who departs the United States and</u>
> <u>returns, shall be regarded as seeking an admission</u>

into the United States despite his lawful permanent resident status,

21 I. & N. Dec. at 1064 (emphases added), and is to be so viewed

> without regard to whether [his] departure from the United States might previously have been regarded as "brief, casual, and innocent" under the Fleuti doctrine,

id. at 1066.

As we have noted in dealing with a different IIRIRA amendment,

> [i]n general, when Congress has delegated authority to an agency to administer a statute, and "the statute is silent or ambiguous with respect to [a] specific issue," we must accord substantial deference to a reasonable interpretation given by the agency and cannot "simply impose [our] own construction on the statute." Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 843, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). The BIA, through powers delegated by the Attorney General, enforces and interprets the INA and thus has the authority to fill statutory gaps with reasonable interpretations.

Martinez v. INS, 523 F.3d 365, 372 (2d Cir. 2008) ("Martinez") (other internal quotation marks omitted), cert. denied, 129 S.Ct. 1314 (2009). In the present case, given IIRIRA's deletion of the pre-1997 definition of "entry," its emphasis on "admission," and its specification of the conditions under which an LPR is or is not to be regarded as seeking "admission," we conclude that the BIA in Collado-Munoz reasonably interpreted IIRIRA as superseding the Fleuti doctrine. Accord De Vega v. Gonzales, 503 F.3d 45, 48 (1st Cir. 2007); Camins v. Gonzales, 500 F.3d at 880; Malagon de Fuentes v. Gonzales, 462 F.3d 498, 501-02 (5th Cir. 2006); Tineo v. Ashcroft, 350 F.3d 382, 395-96 (3d Cir. 2003).

Vartelas argues, however, that because his plea of guilty preceded IIRIRA, the IIRIRA amendment to § 101(a)(13) was impermissibly retroactive as applied to him. We consider the issue of retroactivity de novo, without giving deference to the opinion of the BIA, as the question of whether an IIRIRA amendment "would have an improper retroactive effect in [a] particular case . . . does not concern the sort of statutory gap that Congress has designated the BIA to fill, nor a matter in which the BIA has particular expertise." Martinez, 523 F.3d at 372-73. In conducting the retroactivity analysis, we use the familiar two-step inquiry announced in Landgraf v. USI Film Products, 511 U.S. 244 (1994).

In the first Landgraf step, we "must ascertain, using the ordinary tools of statutory construction, 'whether Congress has expressly prescribed the statute's proper reach.'" Martinez, 523 F.3d at 370 (quoting Landgraf, 511 U.S. at 280). If Congress has expressly prescribed the relevant provision's temporal reach, we need look no farther. Here, we note--and the government concedes--that Congress has not expressly prescribed the temporal reach of § 101(a)(13). Accordingly, we move to the second Landgraf step, in which we ask whether application of the new section would have a "genuinely 'retroactive' effect," 511 U.S. at 277, that is, "whether the new provision attaches new legal consequences to events completed before its enactment" and inappropriately, i.e., contrary to "familiar considerations of fair notice," upsets "settled expectations" that were based on

- 19 -

"reasonable reliance," id. at 270. In making this determination, we bear in mind that a "'statute [is not impermissibly retroactive] merely because it is applied in a case arising from conduct antedating the statute's enactment, or upsets expectations based in prior law,'" Martinez, 523 F.3d at 370 (quoting Landgraf, 511 U.S. at 269) (brackets in Martinez), for "[i]f every time a man relied on existing law in arranging his affairs, he were made secure against any change in legal rules, the whole body of our law would be ossified forever," Landgraf, 511 U.S. at 269 n.24 (internal quotation marks omitted).

Vartelas contends that the application of the new § 101(a)(13)(C)(v) to him would indeed interfere with his settled expectations because that section

> attach[es] a new legal consequence to Petitioner's guilty plea because, based on Petitioner's conviction, [it] renders him inadmissib[l]e upon return from travel outside the United States, no matter how innocent, casual, and brief the travel. Petitioner reasonably relied on the Fleuti doctrine when taking the plea and his subsequent decision to depart the U.S. for a brief period of time.

(Vartelas brief on appeal at 16 (emphases added)). This contention might have greater merit if § 101(a)(13)(C)(v) depended on an LPR's decision to plead guilty. In St. Cyr II, 533 U.S. 289, the Supreme Court addressed the amendments to the INA adopted in § 440(d) of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") and IIRIRA, which, respectively, reduced and then eliminated the availability to LPRs of discretionary relief from deportation under INA § 212(c), 8 U.S.C. § 1182(c) (1994) (repealed 1997). Affirming this Court's decision

- 20 -

in St. Cyr I, 229 F.3d at 416, 420, the Supreme Court held that those amendments "impose[d] an impermissible retroactive effect on aliens who, in reliance on the possibility of § 212(c) relief, pleaded guilty to aggravated felonies," St. Cyr II, 533 U.S. at 315 (emphasis added). The Supreme Court observed that "in the period between 1989 and 1995 alone, § 212(c) relief was granted to over 10,000 aliens," 533 U.S. at 296, constituting "a substantial percentage" of all LPR "applications for § 212(c) relief," 533 U.S. at 296; see id. at 296 n.5 (noting "statistics indicating that 51.5% of the applications for which a final decision was reached between 1989 and 1995 were granted"). The St. Cyr II Court noted that

> [g]iven the frequency with which § 212(c) relief was granted in the years leading up to AEDPA and IIRIRA, preserving the possibility of such relief would have been one of the principal benefits sought by defendants deciding whether to accept a plea offer or instead to proceed to trial.

Id. at 323 (footnote omitted) (emphasis added). Elementary notions of fairness thus required the conclusion that the AEDPA/IIRIRA amendments eliminating the availability of § 212(c) relief would be impermissibly retroactive if applied to LPRs who, prior to the effective dates of those statutes, relied on the availability of such relief in deciding to plead guilty:

> Plea agreements involve a quid pro quo between a criminal defendant and the government. . . . In exchange for some perceived benefit, defendants waive several of their constitutional rights (including the right to a trial) and grant the government numerous tangible benefits, such as promptly imposed punishment without the expenditure of prosecutorial resources. . . . There can be little doubt that, as a general matter, alien defendants considering

> whether to enter into a plea agreement are acutely aware of the immigration consequences of their convictions.

St. Cyr II, 533 U.S. at 321-22 (internal quotation marks and footnote omitted) (emphasis added).

> [After] prosecutors have received the benefit of these plea agreements, agreements that were likely facilitated by the aliens' belief in their continued eligibility for § 212(c) relief, it would surely be contrary to "familiar considerations of fair notice, reasonable reliance, and settled expectations," . . . to hold that IIRIRA's subsequent restrictions deprive them of any possibility of such relief.

Id. at 323-24 (quoting Landgraf, 511 U.S. at 270) (emphases ours).

In St. Cyr I, we noted that it was "the conviction, not the underlying criminal act, that trigger[ed] the disqualification from § 212(c) relief," 229 F.3d at 418 (internal quotation marks omitted); and in Rankine v. Reno, 319 F.3d 93, 100 (2d Cir.), cert. denied, 540 U.S. 910 (2003), we noted that the retroactivity concerns with respect to § 212(c) relief are triggered by an LPR's decision to plead guilty, rather than by a conviction after a trial. Although Vartelas argues that § 101(a)(13)(C)(v) is impermissibly retroactive because he pleaded guilty in reliance on the Fleuti doctrine, that section, unlike § 212(c), does not hinge on either an LPR's conviction or his decision to plead guilty; rather, it turns on whether the LPR "has committed an offense identified in section 1182(a)(2)" (emphasis added). In defining the terms used in the INA, Congress has fashioned some subsections in reference to an alien's conviction, and others in reference to the offense's commission. For example, compare 8 U.S.C.

- 22 -

§ 1101(f)(8) (stating that no person is to be "regarded as . . . a person of good moral character" during any period in which he "has been <u>convicted</u>" of an aggravated felony (emphasis added)), <u>with</u> <u>id</u>. § 1101(a)(13)(C)(v) (prescribing the admission status of an LPR who "has <u>committed</u> an offense" involving moral turpitude (emphasis added)). When Congress "uses certain language in one part of the statute and different language in another, the court assumes different meanings were intended." <u>Sosa v. Alvarez-Machain</u>, 542 U.S. 692, 711 n.9 (2004) (internal quotation marks omitted). Here, we infer that in framing § 101(a)(13)(C)(v) to refer to an LPR who "has committed an offense," Congress intended the focus to be on the alien's commission of the crime; and that is the event on which we focus in order to determine whether the new section unfairly unsettles any reasonable expectations.

We have consistently rejected the notion that an alien can reasonably have relied on provisions of the immigration laws in "committ[ing]" his crimes. In <u>St. Cyr I</u>, we rejected the petitioner's argument--and the district court's ruling--that the AEDPA/IIRIRA elimination of § 212(c) discretionary relief "should not be applied retrospectively to bar [an LPR's] eligibility for § 212(c) relief because . . . <u>his criminal conduct</u> . . . occurred prior to the statutes' enactment," <u>St. Cyr I</u>, 229 F.3d at 409 (emphasis added). The district court had "reasoned that Congress did not intend AEDPA § 440(d) to be applied retroactively to such pre-enactment events because it would unfairly attach new legal consequences to <u>pre-AEDPA criminal conduct</u>." <u>Id</u>. (emphasis

added). We refused to endorse the proposition that "barring eligibility for discretionary relief on the basis of pre-enactment criminal conduct--as opposed to a plea going to the guilt of a deportable crime--constitutes an impermissible retroactive application of a statute," id. at 418 (emphasis added). Rather, we viewed it as

> border[ing] on the absurd to argue that these aliens might have decided not to commit [their] crimes, or might have resisted conviction more vigorously, had they known that if they were not only imprisoned but also, when their prison term ended, ordered deported, they could not ask for a discretionary waiver of deportation.

Id. (internal quotation marks omitted). See, e.g., Domond v. INS, 244 F.3d 81, 86 (2d Cir. 2001) (same).

We made a similar observation in Martinez, 523 F.3d 365, which concerned the former § 212(c)'s requirement that, to be eligible for discretionary relief from deportation, the alien must, inter alia, have been domiciled in the United States for seven consecutive years; the Martinez petitioner, who committed his crime in 1995, made a retroactivity challenge to IIRIRA § 240A(d)(1)(B), codified at 8 U.S.C. § 1229b(d)(1)(B), which provides that the continuity of an LPR's residence in the United States is halted by his commission of a crime involving moral turpitude or narcotics trafficking. We rejected the notion that an alien in committing a crime could reasonably have relied on the prospect that there would be no change in the immigration laws, noting that "it makes no sense at all to ask whether an alien . . . acted with an intention to preserve [his or her] eligibility

for relief under § 212(c)" in "committing" his offense. 523 F.3d at 376 (internal quotation marks omitted).

In the present case, given that § 101(a)(13)(C)(v) governs the entry status of an LPR who has "committed" a crime involving moral turpitude, we likewise conclude that the application of that section with respect to Vartelas's January 2003 foreign trip--an event begun and completed long after the effective date of IIRIRA--is not impermissibly retroactive, for here too it would border on the absurd to suggest that Vartelas committed his counterfeiting crime in reliance on the immigration laws.

Vartelas points out that two of our Sister Circuits have reached a conclusion contrary to the one we reach today, see Camins v. Gonzales, 500 F.3d 872; Olatunji v. Ashcroft, 387 F.3d 383 (4th Cir. 2004). We do not find these cases persuasive. The Camins Court reasoned that § 101(a)(13)(C)(v) unfairly imposes a new burden on an LPR who pleaded guilty to a crime involving moral turpitude by "effectively prohibit[ing] him from making any overseas travel." 500 F.3d at 883 (emphasis omitted). The burden, however, is not on the LPR's right to travel abroad but rather on the absoluteness of his right to enter the United States again--a matter that is squarely within the province of Congress to regulate. Moreover, in both Camins and Olatunji, the Courts analyzed retroactivity in relation to the alien's plea of guilty; neither opinion addressed § 101(a)(13)(C)(v)'s focus on the LPR's "commi[ssion]" of the crime, or on the lack of rationality in any

claim that the LPR reasonably relied on the immigration laws in deciding to break the criminal laws. Indeed, the Olatunji Court held that reliance plays no role whatever in the retroactivity analysis, see 387 F.3d at 389-91, a proposition that is contrary to the reasoning of this Court in St. Cyr I, see 229 F.3d at 419, and to that of the Supreme Court in St. Cyr II, see, e.g., 533 U.S. at 325 ("the elimination of any possibility of § 212(c) relief by IIRIRA has an obvious and severe retroactive effect" "[b]ecause respondent, and other aliens like him, almost certainly relied upon th[e] likelihood [of such relief] in deciding whether to forgo their right to a trial" (emphasis added)).

In sum, we conclude that § 101(a)(13)(C)(v), introduced by IIRIRA, has superseded the Fleuti doctrine and that the application of that section to an LPR who, after the effective date of IIRIRA, makes a trip abroad and seeks to reenter the United States is not impermissibly retroactive. Thus, Vartelas has not shown that he was prejudiced by his attorneys' failure to argue retroactivity.

CONCLUSION

We have considered all of Vartelas's contentions in his petition for review and have found them to be without merit. The petition for review is denied.