Justice Scalia,
with whom Justice Thomas and Justice Alito join, dissenting.
As part of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), Congress required that lawful permanent residents who have committed certain crimes seek formal “admission” when they return to the United States from abroad. 8 U. S. C. § 1101(a)(13)(C)(v). This case presents a straightforward question of statutory interpretation: Does that statute apply to lawful permanent residents who, like Vartelas, committed one of the specified offenses before 1996, but traveled abroad after 1996? Under the proper approach to determining a statute’s temporal application, the answer is yes.
>-H
The text of §1101(a)(13)(C)(v) does not contain a clear statement answering the question presented here. So the Court is correct that this case is governed by our longstanding interpretive principle that, in the absence of a contrary indication, a statute will not be construed to have retroactive application. See, e. g., Landgraf v. USI Film Products, 511 U. S. 244, 280 (1994). The operative provision of this text— the provision that specifies the act that it prohibits or prescribes — says that lawful permanent residents convicted of offenses similar to Vartelas’s must seek formal “admission” before they return to the United States from abroad. Since Vartelas returned to the United States after the statute’s effective date, the application of that text to his reentry does not give the statute a retroactive effect.
*277 In determining whether a statute applies retroactively, we should concern ourselves with the statute’s actual operation on regulated parties, not with retroactivity as an abstract concept or as a substitute for fairness concerns. It is impossible to decide whether a statute’s application is retrospective or prospective without first identifying a reference point — a moment in time to which the statute’s effective date is either subsequent or antecedent. (Otherwise, the obvious question — retroactive in reference to what? — remains unanswered.) In my view, the identity of that reference point turns on the activity a statute is intended to regulate. For any given regulated party, the reference point (or “retroac-tivity event”) is the moment at which the party does what the statute forbids or fails to do what it requires. See Martin v. Hadix, 527 U. S. 343, 362-363 (1999) (Scalia, J., concurring in part and concurring in judgment); Landgraf, supra, at 291 (Scalia, J., concurring in judgments). With an identified reference point, the retroactivity analysis is simple. If a person has engaged in the primary regulated activity before the statute’s effective date, then the statute’s application would be retroactive. But if a person engages in the primary regulated activity after the statute’s effective date, then the statute’s application is prospective only. In the latter case, the interpretive presumption against retroac-tivity does not bar the statute’s application.
Under that commonsense approach, this is a relatively easy case. Although the class of aliens affected by § 1101(a)(13)(C)(v) is defined with respect to past crimes, the regulated activity is reentry into the United States. By its terms, the statute is all about controlling admission at the border. It specifies six criteria to identify lawful permanent residents who are subject to formal “admission” procedures, most of which relate to the circumstances of departure, the trip itself, or reentry. The titles of the statutory sections containing § 1101(a)(13)(C)(v) confirm its focus on admission, rather than crime: The provision is located within Title III *278 of IIRIRA (“Inspection, Apprehension, Detention, Adjudication, and Removal of Inadmissible and Deportable Aliens”), under Subtitle A (“Revision of Procedures for Removal of Aliens”), and § 301 (“Treating Persons Present in the United States Without Authorization as Not Admitted”). 110 Stat. 3009-575. And the specific subsection of IIRIRA at issue (§ 301(a), entitled “ Admission’ Defined”) is an amendment to the definition of “entry” in the general “Definitions” section of the Immigration and Nationality Act (INA). See ante, at 261-262. The original provision told border officials how to regulate admission — not how to punish crime — and the amendment does as well.
Section 1101(a)(13)(C)(v) thus has no retroactive effect on Vartelas because the reference point here — Vartelas’s readmission to the United States after a trip abroad — occurred years after the statute’s effective date. Although Vartelas cannot change the fact of his prior conviction, he could have avoided entirely the consequences of § 1101(a)(13)(C)(v) by simply remaining in the United States or, having left, remaining in Greece. That § 1101(a)(13)(C)(v) had no effect on Vartelas until he performed a postenactment activity is a clear indication that the statute’s application is purely prospective. See Fernandez-Vargas v. Gonzales, 548 U. S. 30, 45, n. 11, 46 (2006) (no retroactive effect where the statute in question did “not operate on a completed preenactment act” and instead turned on “a failure to take timely action that would have avoided application of the new law altogether”).
II
The Court avoids this conclusion by insisting that “past misconduct, . . . not present travel, is the wrongful activity Congress targeted” in § 1101(a)(13)(C)(v). Ante, at 269-270. That assertion does not, however, have any basis in the statute’s text or structure, and the Court does not pretend otherwise. Instead, the Court simply asserts that Vartelas’s “lawful foreign travel” surely could not be the “reason for *279 the ‘new disability’ imposed on him.” Ante, at 269. But the reason for a prohibition has nothing to do with whether the prohibition is being applied to a past rather than a future act. It may be relevant to other legal inquiries — for example, to whether a legislative act violates one of the Ex Post Facto Clauses in Article I, see, e. g., Smith v. Doe, 538 U. S. 84, 92 (2003), or one of the Due Process Clauses in the Fifth and Fourteenth Amendments, see, e. g., Williamson v. Lee Optical of Okla., Inc., 348 U. S. 483, 487 (1955), or the Takings Clause in the Fifth Amendment, see, e. g., Kelo v. New London, 545 U. S. 469, 477-483 (2005), or the Obligation of Contracts Clause in Article I, see, e. g., United States Trust Co. of N. Y. v. New Jersey, 431 U. S. 1, 29 (1977). But it has no direct bearing upon whether the statute is retroactive.*
The Court’s failure to differentiate between the statutory-interpretation question (whether giving certain effect ,to a provision would make it retroactive and hence presumptively unintended) and the validity question (whether giving certain effect to a provision is unlawful) is on full display in its attempts to distinguish § 1101(a)(13)(C)(v) from similar statutes. Take, for example, the Court’s discussion of the Racketeer Influenced and Corrupt Organizations Act (RICO). That Act, which targets “patterns of racketeering,” expressly defines those “patterns” to include some preenactment conduct. See 18 U. S. C. § 1961(5). Courts interpreting RICO therefore need not consider the presumption against retroactivity; instead, the cases cited by the majority *280 consider whether RICO violates the Ex Post Facto Clause. See United States v. Brown, 555 F. 2d 407, 416-417 (CA5 1977); United States v. Campanale, 518 F. 2d 352, 364-365 (CA9 1975) (per curiam). The Government recognized this distinction and cited RICO to make a point about the Ex Post Facto Clause rather than the presumption against ret-roactivity, Brief for Respondent 17-18; the Court evidently does not.
The Court’s confident assertion that Congress surely would not have meant this statute to apply to Vartelas, whose foreign travel and subsequent return to the United States were innocent events, ante, at 269-270, 272, simply begs the question presented in this case. Ignorance, of course, is no excuse (ignorantia legis neminem excusat); and his return was entirely lawful only if the statute before us did not render it unlawful. Since IIRIRA’s effective date in 1996, lawful permanent residents who have committed crimes of moral turpitude are forbidden to leave the United States and return without formally seeking “admission.” See § 1101(a)(13)(C)(v). As a result, Vartelas’s numerous trips abroad and “uneventful” reentries into the United States after the passage of IIRIRA, see ante, at 264, were lawful only if § 1101(a)(13)(C)(v) does not apply to him— which is, of course, precisely the matter in dispute here.
The Court’s circular reasoning betrays its underlying concern: Because the Court believes that reentry after a brief trip abroad should be lawful, it will decline to apply a statute that clearly provides otherwise for certain criminal aliens. (The same instinct likely produced the Court’s questionable statutory interpretation in Rosenberg v. Fleuti, 374 U. S. 449 (1963).) The Court’s test for retroactivity — asking whether the statute creates a “new disability” in “respect to past events” — invites this focus on fairness. Understandably so, since it is derived from a Justice Story opinion interpreting a provision of the New Hampshire Constitution that forbade retroactive laws — a provision comparable to the Federal *281 Constitution’s ex post facto prohibition and bearing no relation to the presumption against retroactivity. What is unfair or irrational (and hence should be forbidden) has nothing to do with whether applying a statute to a particular act is prospective (and thus presumptively intended) or retroactive (and thus presumptively unintended). On the latter question, the “new disability in respect to past events” test provides no meaningful guidance.
I can imagine countless laws that, like § 1101(a)(18)(C)(v), impose “new disabilities” related to “past events” and' yet do not operate retroactively. For example, a statute making persons convicted of drug crimes ineligible for student loans. See, e. g., 20 U. S. C. § 1091(r)(1). Or laws prohibiting those convicted of sex crimes from working in certain jobs that involve repeated contact with minors. See, e. g., Cal. Penal Code Ann. § 290.95(c) (West Supp. 2012). . Or laws prohibiting those previously committed for mental instability from purchasing guns. See, e. g., 18 U. S. C. § 922(g)(4). The Court concedes that it would not consider the last two laws inapplicable to preenactment convictions or commitments. Ante, at 271, n. 7. The Court does not deny that these statutes impose a “new disability in respect to past events,” but it distinguishes them based on the reason for their enactment: These statutes “address dangers that arise postenactment.” Ibid. So much for the new-disability-in-respect-to-past-events test; it has now become a new-disability-not-designed-to-guard-against-future-danger test. But why is guarding against future danger the only reason Congress may wish to regulate future action in light of past events? It obviously is not. So the Court must invent yet another doctrine to address my first example, the law making persons convicted of drug crimes ineligible for student loans. According to the Court, that statute differs. from § 1101(a)(13)(C)(v) because it “has a prospective thrust.” Ante, at 271, n. 7. I cannot imagine what that means, other than that the statute regulates postenactment conduct. *282 But, of course, so does § 1101(a)(13)(C)(v). Rather than reconciling any of these distinctions with Justice Story’s formulation of retroactivity, the Court leaves to lower courts the unenviable task of identifying new-disabilities-not-designed-to-guard-against-future-danger-and-also-laeking-a-prospeetive-thrust.
And anyway, is there any doubt that § 1101(a)(13)(C)(v) is intended to guard against the “dangers that arise postenactment” from having aliens in our midst who have shown themselves to have proclivity for crime? Must that be rejected as its purpose simply because Congress has not sought to achieve it by all possible means — by ferreting out such dangerous aliens and going through the expensive and lengthy process of deporting them? At least some of the postenactment danger can readily be eliminated by forcing lawful permanent residents who have committed certain crimes to undergo formal “admission” procedures at our borders. Indeed, by limiting criminal aliens’ opportunities to travel and then return to the United States, § 1101(a)(13)(C)(v) may encourage self-deportation. But all this is irrelevant. The positing of legislative “purpose” is always a slippery enterprise compared to the simple determination whether a statute regulates a future event — and it is that, rather than the Court’s pronouncement of some forward-looking reason, which governs whether a statute has retroactive effect.
Finally, I cannot avoid observing that even if the Court’s concern about the fairness or rationality of applying § 1101(a)(13)(C)(v) to Vartelas were relevant to the statutory-interpretation question, that concern is greatly exaggerated. In disregard of a federal statute, convicted criminal Vartelas repeatedly traveled to and from Greece without ever seeking formal admission at this country’s borders. When he was finally unlucky enough to be apprehended, and sought discretionary relief from removal under former § 212(c) of the INA, 8 U. S. C. § 1182(c) (1994 ed.), the Immigration Judge denying his application found that Vartelas had made frequent trips *283 to Greece and had remained there for long periods of time, that he was “a serious tax evader,” that he had offered testimony that was “close to incredible,” and that he had not shown hardship to himself or his estranged wife and children should he be removed.. See 620 F. 3d 108, 111 (CA2 2010); Brief for Respondent 5 (internal quotation marks omitted). In decrying the “harsh penalty” imposed by this statute on Vartelas, the Court ignores those inconvenient facts. Ante, at 268. But never mind. Under any sensible approach to the presumption against retroactivity, these factual subtleties should be irrelevant to the temporal application of §1101(a)(13)(C)(v).
* * *
This case raises a plain-vanilla question of statutory interpretation, not broader questions about frustrated expectations or fairness. Our approach to answering that question should be similarly straightforward: We should determine what relevant activity the statute regulates (here, reentry); absent a clear statement otherwise, only such relevant activity which occurs after the statute’s effective date should be covered (here, post-1996 reentries). If, as so construed,' the statute is unfair or irrational enough to violate the Constitution, that is another matter entirely, and one not presented here. Our interpretive presumption against retroactivity, however, is just that — a took to ascertain what the statute means, not a license to rewrite the statute in a way the Court considers more desirable.
I respectfully dissent.

1 say no direct bearing because if the prospective application of a statute would raise constitutional doubts because of its effect on pre-enactment conduct, that would be a reason to presume a legislative intent not to apply it unless the conduct in question is postenactment — that is, to consider it retroactive when the conduct in question is preenactment. See Clark v. Martinez, 543 U. S. 371, 380-381 (2005). That is not an issue here. If the statute had expressly made the new “admission” rule applicable to those aliens with prior convictions, its constitutionality would not be in doubt.